CHARLES R. STOCKTON, PETITIONER-APPELLANT, v. BOARD OF EDUCATION OF THE CITY OF TRENTON, MERCER COUNTY, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted March 26, 1986—Decided May 16, 1986.

Before Judges KING, O'BRIEN and SIMPSON.

*Ruhlman, Butrym & Friedman,* P.A., attorneys for petitioner (*Mary Jane Cullen,* on the brief).

*W. Cary Edwards,* Attorney General of New Jersey, attorney for respondent State Board of Education (*David Earle Powers,* Deputy Attorney General, on the brief).

*Merlino, Rottkamp & Flacks,* attorneys for respondent Board of Education of the City of Trenton, Mercer County (*Robert B. Rottkamp, Jr.,* of counsel and on the brief).

The opinion of the court was delivered by

O'BRIEN, J.A.D.

Petitioner appeals from a decision of the State Board of Education (State Board) dismissing his petition as time barred

pursuant to *N.J.A.C.* 6:24–1.2. We reverse and remand for a hearing on the merits of the petition.

Petitioner was first employed by the Board of Education of the City of Trenton (Board) on March 17, 1980 as a learning disability teacher consultant (LDTC). At that time he was placed at step 11 of the learning consultants' salary guide. For the following school year, 1980–1981, petitioner was placed at step 12 of the salary guide. On the merits of the controversy, the Board contends that for the 1980–1981 school year petitioner should have remained at step 11 of the salary guide pursuant to the negotiated bargaining agreement between the Board and the Education Association representing petitioner. That agreement provided:

> Each teacher shall be placed on his proper step of the salary schedule as of the beginning of the school year for the duration of this contract. Any teacher employed prior to February 1st of any school year shall be given full credit for one (1) year of service toward the next increment step for the following year.

Since petitioner was hired after February 1, 1980, the Board contends he should have remained at step 11 of the salary guide for the school year 1980–1981. Notwithstanding this alleged mistake, petitioner was placed at step 13 for the 1981–1982 school year, and step 14 for the 1982–1983 school year. Each year he was paid in accordance with the salary guide for the step in which he had been placed.

On May 20, 1983, petitioner accepted a contract offered by the Board for the 1983–1984 school year, at an annual salary of $27,227 which corresponded to step 15 of the guide. The agreement noted that the salary was to be adjusted upon ratification of a new bargaining agreement. Beginning on September 1, 1983, petitioner was employed at step 15 of the original guide and paid the salary corresponding to that step. A new negotiated bargaining agreement between the Board and the Education Association was adopted by the Board on October 4, 1983. Upon adoption of the new agreement, petitioner was reduced from step 15 to step 14 and began receiving

the salary corresponding to that step under the new guide, *i.e.*, $27,751. The new salary for step 15 was $28,569.

The first check paid to petitioner at the reduced step on the salary guide was received on November 9, 1983. Petitioner immediately complained to the personnel and business office. On December 16, 1983, petitioner's attorney informed the New Jersey Education Association of petitioner's circumstance, with a copy of the letter sent to the Board.

On January 30, 1984, petitioner sent a letter to an assistant superintendent-business administrator of the Board which reads as follows:

> I have sought legal counsel and have been apprised by Mr. Richard A. Friedman, Attorney-at-law, that the Board of Education cannot reduce a tenured teacher's salary.
>
> Please reinstate my salary to its proper level, step 15 on the Learning Consultants' salary guide, in accordance with the terms of my contract for September 1983 with the increment granted under the new contract. I also want all back pay due me.
>
> I would like to meet with you to discuss this matter.

The assistant superintendent responded cryptically:

> I believe that your 1983–84 salary has been correctly calculated. At no time has your salary been reduced. Keep in mind that you were over-paid, in the last three school years, a total of $2,106.

On April 23, 1984, petitioner filed his petition of appeal with the Commissioner of Education (Commissioner), which was transferred to the Office of Administrative Law (OAL) as a contested case on May 22, 1984. The administrative law judge (ALJ) filed an initial decision on October 4, 1984, dismissing the petition "as not having been filed within 90 days after receipt of the notice by petitioner of the order, ruling or other action concerning which the hearing is requested," pursuant to *N.J. A.C.* 6:24–1.2 [1] The ALJ relied upon the Supreme Court deci-

---

[1]*N.J.A.C.* 6:24–1.2 provides: To initiate a proceeding before the Commissioner to determine a controversy or dispute arising under the school laws, a petitioner shall file with the Commissioner the original copy of the petition, together with proof of service of a copy thereof on the respondent or respondents. Such petition must be filed within 90 days after receipt of the notice by

sion in *North Plainfield Educ. Ass'n. v. Bd. of Educ.*, 96 *N.J.* 587 (1984).

The Commissioner concluded that the order, ruling or other action concerning which the hearing was requested was the decision of February 8, 1984, and accordingly the petition was timely filed. Thus, the Commissioner set aside the decision to the contrary by the ALJ and remanded the case to the OAL for proceedings on the merits. On appeal, the State Board reversed the decision of the Commissioner and adopted the initial decision of the ALJ, concluding that the 90-day time period began when petitioner received his first pay check at the adjusted salary on November 9, 1983, citing *North Plainfield Educ. Ass'n v. Bd. of Educ., supra.* However, five members of the State Board dissented in a thoughtful opinion which concluded that the rule set forth in the majority opinion was inequitable, although favored by the weight of authority.

We are thus presented with the question as to when the 90-day period for the filing of the petition began to run, *i.e.,* November 9, 1983 when petitioner received his first paycheck based on step 14 rather than step 15 of the salary guide, or February 8, 1984 when his request for correction was rejected by the assistant superintendent.

Initially we observe that the decision to reduce petitioner from a step-15 level to a step-14 level does not appear to have been made by any action of the Board. Both parties rely upon the decision of the Supreme Court in *North Plainfield.* In that case, two tenured teachers took sabbatical leaves for the second semester of the 1978–79 school year to pursue full-time graduate study. Each remained at the same step on the salary guide for the 1979–80 school year as they had been in when they went on sabbatical. They did not receive credit for the time spent on sabbatical for purposes of advancing along the salary scale,

---

the petitioner of the order, ruling or other action concerning which the hearing is requested.

although they did receive a salary increment because of their placement in the Master's, rather than the Bachelor's degree category. In November 1979 a grievance was filed on their behalf, which the Board denied and an arbitrator affirmed on July 22, 1980. For the following school year, 1980–81, each teacher advanced one step on the salary guide. A petition was filed with the commissioner on their behalf requesting an order advancing them an additional step on the salary guide. The petition was dismissed as untimely, having been filed one year after the teachers were denied advancement on the salary guide because they did not receive credit for the time spent on sabbatical. It was the teachers' position that the prior ruling in favor of the Board pertained to the 1979–80 school year, but that the salary for 1980–81 was a new school year and they had timely objected to the advance of one rather than two steps on the salary guide. In an unreported decision, we reversed the State Board decision that the petition was untimely, reasoning that the teachers had a statutory right to credit on the salary scale without regard to performance and that the time bar of *N.J.A.C.* 6:24–1.2 could not affect that right. We held that the right to a yearly increment was a statutory benefit under *N.J.S.A.* 18A:29–8, which reads:

> Any member holding office, position or employment in any school district of this state, shall be entitled annually to an employment increment until he shall have reached the maximum salary provided in the appropriate training level column in the preceding section.

The Supreme Court disagreed and reversed, concluding that a teacher's entitlement to a salary increase under *N.J.S.A.* 18A:29–8 is subject to denial by a school board "for inefficiency or other good cause." 96 *N.J.* at 593; *N.J.S.A.* 18A:29–14. The Court distinguished the credit received by veterans under *N.J. S.A.* 18A:29–11 which the Supreme Court had previously ruled in *Lavin v. Hackensack Bd. of Educ.*, 90 *N.J.* 145 (1982), was a statutory entitlement, rather than an element of the employment contract.

In this case, the Board relies upon the conclusion of the Supreme Court in *North Plainfield* that receipt by the teachers of their first salary check in September 1979 constituted sufficient notice to trigger the 90-day time period of *N.J.A.C.* 6:24–1.2. Thus, they argue when petitioner here received his salary check on November 9, 1983, the 90-day time period was also triggered.

Petitioner relies upon *North Plainfield* for the proposition that once he began the 1983–84 school year at step 15 on the salary guide, he had a vested right to that salary, as a tenured teacher whose compensation could not be reduced under *N.J. S.A.* 18A:28–5 and *N.J.S.A.* 18A:6–10. Petitioner also cites a series of school law decisions to that effect, particularly *Anson v. Bridgeton Bd. of Educ.*, 1972 *S.L.D.* 638, in which three teachers' salaries were set at a higher level than that to which each was entitled, and the commissioner ruled that the teachers had acquired vested rights to the salaries established for them by the board's adoption of their salary placement, saying:

> If there had been a mistake in the placement of petitioners on the salary guide, it was not of their making and they cannot, as teachers under tenure, be deprived of a right they had acquired by the action of the board in fixing their salaries for the 1970–71 school year.

Unfortunately, the per curiam decision of the Supreme Court in *North Plainfield* invites support for both positions. As to notice, it can certainly be argued that petitioner here had the same type of notice as petitioners in *North Plainfield* of the action about which they complained in their petition of appeal. In *North Plainfield*, the complaint of petitioners was the subject of a grievance by their union which went through the entire process resulting in an arbiters decision in favor of the board. This, of course, is not unlike the steps taken by petitioner here, who immediately complained to the personnel, payroll and business office in November 1983, retained counsel who wrote a letter in December 1983, and who requested action by his letter of January 30, 1984, which resulted in the denial of

his request by the February 8, 1984 letter from the assistant superintendent.

■ Nonetheless, we cannot conceive the Supreme Court would apply the principle which appears to evolve from *North Plainfield* to the facts in this case. Petitioner was offered a contract at step 15 which he accepted and upon which he began working in September 1983. The unilateral decision of someone (apparently not the official act of the Board) to correct an error allegedly made in September 1981, by reducing petitioner to step 14, appears to us to violate the Teachers' Tenure Act by reducing his compensation in violation of *N.J.S.A.* 18A:6–10, notwithstanding that the adoption of the new contract in October 1983 resulted in a small increase in petitioner's salary because he was reduced from step 15 to step 14. In our opinion, it is unnecessary in this case to decide whether a tenured teacher's salary becomes a statutory right equivalent to the credit for military service as teaching experience under *N.J.S.A.* 18A:29–11 as the Appellate Division apparently concluded in *North Plainfield*. The one-step reduction on the salary guide in this case did not occur at the outset of a new school year as in *North Plainfield*, but after both parties had undertaken performance of the contract for the school year 1983–84. In our opinion, this circumstance removes this case from the principles established in *North Plainfield*.

■ Furthermore, the reasons given by the commissioner and the dissenting members of the State Board for not following the initial decision of the ALJ, in our judgment, make eminently good sense. Certainly receipt of a salary check for less of an increase than one anticipates cannot provide notice that a decision has been made to correct an error allegedly made three years before. Rather, in this computer age, it could simply have been an error. More importantly, the reasoning of the ALJ and the majority of the State Board, would open the

floodgates to petitions to the commissioner before the dispute really evolved into a "controversy." Finally, the language of *N.J.A.C.* 6:24–1.2 speaks of notice by the petitioner of the order, ruling, or other action concerning which the hearing is requested. The issuance of a paycheck for the wrong amount[2] is of course neither an order nor a ruling and must therefore fall within the category of "other action." We do not believe the incipient action of a school board employee to unilaterally attempt correction of a three year old error can be categorized as a "controversy or dispute" within the meaning of *N.J.A.C.* 6:24–1.2. Perhaps upon discussion after the parties "reason together," one of the parties may accede to the position of the other and a controversy or dispute may never arise. Obviously, in *North Plainfield,* a dispute or controversy had arisen which became the subject matter of a grievance and an arbitration proceeding. In the instant case, only petitioner's views were expressed by his oral complaint in November, his letter in December and his letter in January. It was not until the response from the assistant superintendent of February 8 rejecting petitioner's position that a dispute or controversy came into being. We therefore are in accord with the decision of the Commissioner and the minority members of the State Board. The decision of the State Board is reversed and remanded to the Commissioner for resolution of the issue on the merits.

---

[2]In its brief, the Board erroneously states that the Supreme Court in *Williams v. Bd. of Educ. of Deptford,* 98 *N.J.* 319 (1985), had affirmed the Appellate Division's decision which held that an erroneous payment to a teacher due to misinterpretation, could be recouped because it enures to the detriment of the taxpayers of the school district. On the contrary, the Supreme Court labeled that determination by the Appellate Division "dictum" which was not before it and upon which it expressed no view. In affirming it noted that the dissenting opinion did not address that dictum.