233 N.J. Super. 568 (1989)
559 A.2d 845
YALE EMMER, PLAINTIFF-APPELLANT,
v.
KENNETH D. MERIN, COMMISSIONER, DEPARTMENT OF INSURANCE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 1989.
Decided June 7, 1989.
*571 Before Judges MICHELS, LONG and MUIR, Jr.
Dennis A. Drazin and Michael D. Schottland argued the cause for appellant (Drazin & Warshaw and Chamlin, Schottland, Rosen, Cavanagh & Uliano, attorneys; Thomas J. DiChiara and Steven L. Kessel, on the brief).
Stephen P. Tasy, Deputy Attorney General, argued the cause for respondent (Peter N. Perretti, Jr., Attorney General, attorney; Michael R. Clancy, Assistant Attorney General, of counsel; Stephen P. Tasy, on the brief).
Elmer M. Matthews argued the cause for amicus curiae American Insurance Association.
The opinion of the court was delivered by MUIR, JR., J.A.D.
This appeal challenges the validity of regulations promulgated by the Commissioner of Insurance to implement recent *572 legislative revisions to New Jersey's no-fault automobile insurance law, L. 1988 c. 119. In particular, plaintiff challenges the model buyer's guide and coverage selection form the regulations authorize insurance companies to provide with all new and renewal policy applications. Essentially, plaintiff seeks to invalidate the regulations on grounds that the model forms countervail the language of the revised no-fault law and are confusing, misleading and improperly biased in the information required to be given to insurance consumers. We disagree and affirm the regulations as a valid exercise of the Commissioner's rule-making authority.

I.
No-fault insurance came to New Jersey with the goal of compensating a larger class of citizens than the traditional tort-based system and doing so with greater efficiency and at a lower cost. See Iavicoli, No Fault and Comparative Negligence in New Jersey, at 20 (1973). As originally enacted in the New Jersey Automobile Reparation Reform Act, L. 1972, c. 70, however, it did so without providing an effective way to materially reduce the number of automobile-related personal injury cases litigated in the courts. As a result, insurance premiums rose dramatically.
The 1972 legislation provided that an insured could sue only when medical expenses exceeded a threshold amount of $200. L. 1972, c. 70, § 8. This limitation was clearly intended to counter the increased premium costs which would result from no-fault insurance. Iavicoli, supra, at 123-25. However, because premiums continued to rise, the Legislature enacted the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984, L. 1983, c. 362, which, among other things, introduced tort options as a means of reducing premiums. See Introductory Statement, Assembly Bill 3981, L. 1983, c. 362. The tort option provisions in that legislation required insurers to permit consumers to choose between a $200 or a $1500 tort limitation option. See L. 1983, c. 362, *573 § 14.1 (eff. Oct. 4, 1983). In this form, the options permitted an insured to sue only if medical expenses exceeded the dollar threshold selected, with a reduction in bodily injury liability premiums for those who selected the $1500 threshold option. See Introductory Statement, Assembly Bill 3981, L. 1983, c. 362. Costs continued to spiral, however, resulting in New Jersey's near lead position in the unenviable category of having the highest automobile insurance premiums in the country. This unenviable position led to consumer outrage and legislative efforts to enact legislation with significant premium reducing provisions. The legislative efforts encountered significant divisiveness on how to resolve the problem. Ultimately a compromise was reached.[1]
*574 On September 8, 1988, Governor Thomas Kean signed into law an act containing a series of amendments to the no-fault automobile insurance law entitled "An Act concerning private passenger automobile insurance and revising parts of statutory law" (Act), which reflected the compromise. That Act made significant changes to the existing law. The primary change required insurance consumers to elect between two types of coverage (tort options) for automobile-accident-related bodily injury. N.J.S.A. 39:6A-8. The election placed in the consumer's hands the decision to pay a lower premium for a policy which restricted recovery for non-economic loss (defined in the law as pain, suffering and inconvenience), N.J.S.A. 39:6A-8a, or a higher premium for a policy with unrestricted right of recovery for non-economic loss. N.J.S.A. 39:6A-8b. The Act described the lower premium option as the basic tort option. N.J.S.A. 39:6A-8b. That option has also been variously characterized as a verbal or lawsuit threshold. The higher premium option has been variously characterized as the zero dollar or no threshold option. For purposes of this opinion, we will utilize the term basic tort option to refer to the lower cost option, and no threshold option to refer to the higher cost option.
The Act prescribed the manner in which consumers would make their election between the two options and the manner in which they would be informed of the premium costs related to that election. It required consumers to make the election in writing by signing a coverage selection form, N.J.S.A. 39:6A-8.1a. The Act also provided that the form "shall state the *575 percentage difference in premium rates or dollar savings between the two tort options." Id. In another section, it stated "the coverage selection form shall identify the range of premium rate credit or dollar savings, or both, and shall provide such other information required by the Commissioner by regulation." N.J.S.A. 39:6A-23a. In the event the consumer failed to make an election, the basic tort option applied. N.J.S.A. 39:6A-8.1b. The tort options provisions applied to all new or renewal policies effective after January 1, 1989. N.J.S.A. 39:6A-8.1c.
The Act also proscribed the issuance of any new automobile insurance policy or renewals unless a buyer's guide and coverage selection form accompanied the application. N.J.S.A. 39:6A-23a and c. The Act mandated the buyer's guide "shall contain a brief description of all available policy coverages and benefit limits, and shall identify which coverages are mandatory and which are optional under State law, as well as all options offered by the insurer." N.J.S.A. 39:6A-23a.[2] It further directed, "The Commissioner of Insurance shall, within 45 days following the effective date of this act, promulgate standards for the written notice and buyers guide required to be provided." N.J.S.A. 39:6A-23c.
Initially, the Commissioner took two steps in the process of providing guidelines for the form and content of the buyer's guide and coverage selection form. First, on November 3, 1988, he issued an Interim Order so the insurance companies could provide consumers with the required buyer's guide and coverage selection form for policies that issued or renewed January 1, 1989 or shortly thereafter. The Interim Order required insurers to provide consumers with a buyer's guide and coverage selection form that at least met the content and form set out in the published proposed regulations. Then, on December 5, 1988, consonant with the requirements of the *576 Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq., he published proposed regulations, and waited the required 30 days, to January 4, 1989, for public comment. 20 N.J.R. 2984.
Subsequently, the Commissioner modified the proposed regulations. He did so in part as the result of comments by members of the public (who included trial attorneys, counsel and representatives of insurance companies) and on his own initiative. Before the Commissioner could publish the modified regulations, plaintiff filed a notice of appeal under R. 2:2-3(a)(2) challenging the proposed regulations.[3]
The pertinent aspects of those proposed regulations read as follows:
A. N.J.A.C. 11:3-15.6(m).
The text of the New Jersey Auto Insurance Buyers Guide [shall read as] follows:
Buying auto insurance can be both expensive and confusing. One important way to keep costs down is to read your policy and consider whether you are buying the coverages which are appropriate for you and your family.
This Buyer's Guide can help you do that. It explains the purpose of each type of coverage. It tells you what the law requires you to buy and what options are available to you.
It will help you fill out the Coverage Selection Form.
For more details, read your policy. The policy, not this Buyer's Guide, is the legal contract between you and your insurance company.
EXPLANATION OF COVERAGES
Your auto insurance policy is actually several kinds of policies, or coverages, rolled into one.

*577 For each coverage, you are charged a separate price, which is known as the premium.
You pay only one price for auto insurance, but that price is determined by adding the premiums for all the coverages you buy.
Use your Coverage Selection Form to indicate what coverages you will buy in accordance with New Jersey law.
The coverages are:
LIABILITY
PERSONAL INJURY PROTECTION
UNINSURED/UNDERINSURED MOTORISTS
COLLISION
COMPREHENSIVE
Use these explanations to help you complete the Coverage Selection Form.
* * * * * * * *
COST SAVER: Lawsuit Threshold

Item 2 on the Coverage Selection Form
Liability claims often involve costly lawsuits. In order to hold down insurance premiums, New Jersey motorists may now choose to limit when they may sue for non-economic loss, which means pain, suffering and inconvenience resulting from an auto accident.
The Lawsuit Threshold is a "verbal threshold" because it uses words, rather than a dollar amount of medical bills, to describe when a suit may be filed. If you select this limitation, then you, your spouse and children living with you who are not covered by name by another auto insurance policy will not be able to sue unless the injury sustained appears on this list:
"death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment."
(N.J.S.A. 39:6A-8, effective January 1, 1989)
You can reject this threshold and retain the right to sue for any auto-related injury. This option, called No Threshold, will increase the price of your insurance policy.
Under state law, you must choose either the Lawsuit Threshold or the No Threshold option. The same choice should be made under all policies that you have. If you do not choose one of these options, you are considered by law to have selected the Lawsuit Threshold option.
*578 B. N.J.A.C. 11:3-15.7(h).
The text of the Coverage Selection Form [shall read as] follows:
COVERAGE SELECTION FORM
Name: ____
You must choose one option for each item below.
The item numbers match the explanations in the New Jersey Automobile Insurance Buyer's Guide. Read the Buyer's Guide for information and help in completing this form.
1. Liability Coverage
How much coverage do you choose for damage you may do to others?
[]
[]
[]
[]
(NOTE: At least four of the most popular coverage limits shall be listed, including the lowest limit offered.)
(NOTE: If a complete list is not provided, state that other coverage limits are available.)
2. Lawsuit Threshold
Do you accept the basic limit on the right to sue if injured in an auto accident?
[] Yes. I want the Lawsuit Threshold.
[] No. I want No Threshold. My ____ premium will be ____% to ____% higher if I select the No Threshold option.
(NOTE: The range of percentage increase shall be included, with the words before "premium" describing what premium was the base for computing the percentage, i.e., bodily injury liability premium, the total liability premium, etc.)
* * * * * * * *
I have read the Buyer's Guide outlining the coverage options available to me. My choices are shown above. I agree that each of these choices will apply for all vehicles insured by my policy and to each subsequent renewal, continuation, replacement or amendment until the insurance company or its authorized representative receives my written request that a change be made.
I understand that, if I do not make a written choice for Item 2, I will receive the Lawsuit Threshold option....
I understand that these choices do not take effect immediately. They will take effect upon policy renewal, or if the choices are delivered after policy renewal, they will take effect upon receipt by the company or by an insurance producer with the company's appropriate binding authority.
 SIGNATURE ____ DATE ____
*579 The modified regulations did not vary the pertinent portions of the text proposed for the buyer's guide. However, they modified the coverage selection form text as follows [underlining indicates modifications]:
The Text of the Coverage Selection Form [shall read as] follows:
* * * * * * * *
 Name: ____
You must choose one option for each item below. The premium reductions or increases that are mentioned in this form compare the cost of one of the current options to the cost of another option now available. However, you should not use your old premium to determine the dollar amount of your premium increase or savings, because your new premium could include rate changes and surcharges that you were not paying previously.

The item numbers match the explanations in the New Jersey Auto[mobile] Insurance Buyer's Guide. Read the Buyer's Guide for information and help in completing this form.
1. Liability Coverage
How much coverage do you choose for damage you may do to others?
[]
[]
[]
[]
* * * * * * * *
2. Lawsuit Threshold
Do you accept the basic limit on the right to sue if injured in an auto accident?
[] Yes. I want the Lawsuit Threshold.
[] No. I want No Threshold....
My bodily injury liability premium will be % to % higher if I select the No Threshold option, depending upon where my car is garaged, my bodily injury liability coverage limit, and other factors. Per vehicle, my bodily injury liability premium will be $ to $ higher if I select the No Threshold option. I understand that I can contact my company or my insurance producer for specific details.

The additional cost of the No Threshold option is determined by calculating the No Threshold rate as a percentage increase relative to the comparable (verbal) Lawsuit Threshold rate. For example, if the Lawsuit Threshold rate is $52 and the No Threshold rate is $112, then the percentage increase for the No Threshold option is 115% and the dollar increase is $60. [N.J.A.C 11:3-15.7(h).]
Additionally, the Commissioner added the following provision:

*580 Insurers [are] to calculate the percentage and dollar changes in premium arising from the selection of the No Threshold option in the following manner:
1. The Percentage Change Calculation: The percentage increase in the bodily injury liability premium arising from the selection of the No Threshold option shall be determined by calculating the No Threshold rate as a percentage increase relative to the comparable (verbal) Lawsuit Limit rate. The low end of the percentage range shall be produced by calculating the percentage increase in the bodily injury liability premium of a policy with a $500,000 split or single limit when the motorist goes from the (verbal) Lawsuit Threshold option to the No Threshold option. The high end of the percentage range shall be produced by making the same calculation using a policy with basic limits. In both calculations, Territory 1 rates shall be used.
2. The Dollar Change Calculation: The dollar increase in the bodily injury liability premium arising from the selection of the No Threshold option shall be determined by subtracting the (verbal) Lawsuit Limit rate from the comparable No Threshold rate. The range shall be produced by calculating the dollar change at basic limits for that territory with the lowest basic limits (verbal) Lawsuit Threshold rate. In addition, the dollar change for a $500,000 split or single limit policy also is to be determined for whatever territory has the highest basic limit (verbal) Lawsuit Threshold rate. These two figures will be the low and the high end of the dollar range, respectively. Because the range of the possible additional dollar cost will depend upon both territory and bodily injury liability loss limits, insurers shall be permitted to use round numbers to represent the approximate range of the cost increase. For example, if the smallest rate increase was $56 and the largest $305, the insurer may use the range $50 to $300 on its Coverage Selection Form. [N.J.A.C. 13:3-15.7(j).]
Plaintiff's attack on the regulations can be grouped essentially into two categories: (1) the model coverage selection form proposed by the regulations violates the dictates of the Act because it requires the price differential between the tort options to be expressed in terms of the higher cost for selecting the higher priced no threshold option rather than a lower cost for selecting the lower priced basic tort option, and (2) the model coverage selection form and buyer's guide are misleading and improperly biased in favor of the basic tort option. We approach our analysis considering those categories, and any integral parts that we later identify, as the grounds for appeal.

II.
We begin our analysis by noting that appellate review of administrative regulations is highly circumscribed. Lower Main v. N.J. Housing & Mortg., 114 N.J. 226, 236 (1989). Our *581 review is particularly limited when, as here, the challenged agency action involves a regulation promulgated by the administrative agency charged with enforcement of a regulatory statute. See New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575 (1978); see also Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 69-70 (1978) ("This Court places great weight on the interpretation of legislation by the administrative agency to whom its enforcement is entrusted."). If there is any fair argument in support of the course taken by an agency, the decision will not be disturbed unless patently corrupt, arbitrary or illegal. New Jersey Guild of Hearing Aid Dispensers v. Long, supra, 75 N.J. at 562-63 (quoting Flanagan v. Civil Service Dept., 29 N.J. 1, 12 (1959)). In this context, the administrative regulation is deemed presumptively valid and the burden is on the challenger to demonstrate the regulation is arbitrary, capricious or unreasonable. Dougherty v. Human Services Dept., 91 N.J. 1, 6 (1982); Consolidation Coal v. Kandle, 105 N.J. Super. 104, 118 (App.Div.), aff'd o.b. 54 N.J. 11 (1969).
Moreover, administrative agencies have wide discretion in selecting the means to fulfil the duties the Legislature has delegated to them. Texter v. Human Services Dep't., 88 N.J. 376, 383 (1982). They have that discretion in part because they have the staff, resources and expertise to understand and solve specialized problems that develop in the course of promulgating regulations directed by legislative enactment. See Bergen Pines Hosp. v. Dept. of Human Serv., 96 N.J. 456, 474 (1984). So, as here, when legislation directs an agency to prescribe form and content of documents, the choice of how to act rests with the discretion of the agency. Texter v. Human Services Dep't., supra, 88 N.J. at 385. "Courts normally defer to that choice so long as the selection is responsive to the purpose and function of the agency." Id. at 385-86.
Applying these well-established principles, we discern no basis for disturbing the regulations adopted by the Commissioner. *582 Appellant fails to overcome the presumption of validity by demonstrating the regulations are arbitrary, unreasonable and capricious. Instead, his arguments essentially misread or misconstrue the Act or fall in the category of "a better way to do it." He improperly chooses to ignore the recognized discretionary expertise of the Commissioner, something we are not free to do. Even if we agreed, which we do not, that the regulations do not precisely comply with the statutory language, it can be fairly argued that the Commissioner's regulations, as written, comply with the statutory language, thereby requiring our deference to the regulations as drafted.

A.
Plaintiff's contention on how to present the cost difference of the two options is unavailing and is disposed of on the ground that it constitutes more an alternative way of presenting the cost differential than an improper countervailing of the legislative language. N.J.S.A. 39:6A-8.1a requires the coverage selection form to be in accordance with the form prescribed by N.J.S.A. 39:6A-23a. It then provides:
The form shall state the percentage difference in premium rates or the dollar savings between the two tort options. [N.J.S.A. 39:6A-8.1a].
N.J.S.A. 39:6A-23a, which in effect is the more specific legislation governing the coverage selection form content, states:
The coverage selection form shall identify the range of premium rate credit or dollar savings or both and shall provide any other information required by the Commissioner by regulation.
The undisputed purpose behind the provisions of the subsections is to convey to the consumer the cost difference between the two options. This purpose has to prevail over any literalism suggested. Statutes are to be read sensibly in light of their purpose rather than to be construed literally. Suter v. San Angelo Mach. Co., 81 N.J. 150, 160 (1979); Schierstead v. City of Brigantine, 29 N.J. 220, 230-31 (1959). If the subsections are read with those principles in mind, the regulations satisfy the legislative purpose.
*583 The coverage selection form tells the consumer, both in terms of range of percentage on premium rates and range of dollar cost for bodily injury coverage, how much more the no threshold option will cost, in a manner substantially consistent with the statutory language under either subsection N.J.S.A. 39:6A-8.1a or 39:6A-23a. It is illogical to suggest, as plaintiff does, that the regulations do not comport with the Act because they do not speak in terms of premium rate credit and dollar savings for the lower premium option. Not only does the Act not mandate such specificity, but any consumer can reason that if the No Threshold option is higher, whether expressed as a percentage of the premium rate or in an actual dollar amount, then those figures would correspond to the premium rate credit and dollar saving he will have if he chooses the basic tort option. Any lack of clarity on that issue is resolved by the example used in the coverage selection form. Additionally, by instructing carriers under N.J.A.C. 13:3-15.7 on how to calculate coverage percentage change and dollar change between the tort options, the Commissioner can be deemed to have utilized his expertise and provided "such other information required" allowed for by N.J.S.A. 39:6A-23a.
Moreover, there is no basis for concluding, as plaintiff contends, that subsections N.J.S.A. 39:6A-8.1a and N.J.S.A. 39:6A-23a are inconsistent and that the former must prevail. We do not read the statutes to impliedly repeal one another. Mahwah Tp. v. Bergen Co. Bd. of Taxation, 98 N.J. 268, 280-81 (1985). Instead, we read them presuming that the Legislature is familiar with its own enactments and passed them with the intent that old and new aspects of a law be consistent. See Zoning Board of Adjustment of Sparta Tp. v. Service Elec. Cable Television of New Jersey, Inc., 198 N.J. Super. 370, 381 (App.Div. 1985).
Sections 39:6A-8.1a and 39:6A-23a can be read as consistent with one another. The first subsection refers to the coverage selection form in a general way, while the latter does so with *584 specificity. Reading the latter in the disjunctive, as it is written, it is justifiable to conclude that while the coverage selection form must specify the cost savings of the options involved, the Commissioner had the discretion, as he points out in his brief, to choose to present that in the form of a range of premium rate credit or in the form of a range of dollar savings, or in both forms. Thus, we read the subsections to be consistent and the regulations in sufficient compliance with them to avoid judicial intervention.
Nevertheless, plaintiff argues that each consumer should be told the exact dollar amount of premium savings arising from election of the basic tort option. The argument overlooks, as does much of plaintiff's reasoning, the essential expertise of the Commissioner. That particular contention arose in the course of public comment. The Commissioner responded:
RESPONSE: This is impossible on a preprinted form because the exact dollar amount varies from policyholder to policyholder. Requiring the information on a customized form specific to each policyholder would be onerous and inefficient. The state does not require such specificity.
As always, the policyholder who wants that specific information has the right to request and receive it. Therefore, as a more appropriate method to achieving the goal sought by Messrs. Newell and Stark, the rule will be amended upon adoption to require an additional line on the Coverage Selection Form reminding the policyholder of this right. [21 N.J.R. 558, 559 (February 21, 1989).]
As noted by the amicus brief, the variables involved are so extensive that the coverage selection forms cannot be "customized" for every insured and for every vehicle. For us to set aside the Commissioner's regulations on this ground would do severe violence to the principles that govern our scope of review.

B.
Plaintiff's contention regarding confusion and bias misreads and misconstrues the legislation and its purposes. Plaintiff states the Commissioner should have used the terms "Verbal Threshold" and "Zero Dollar Threshold" because they are *585 the terms of the legislation. Yet, nowhere in the Act is there any reference to "Verbal Threshold" or "Zero Dollar Threshold." Those terms may have been used by the Governor and Legislature in their statements regarding the "thresholds," but they did not find their way into the Act. We find the word "verbal," plaintiff's choice for describing the basic tort option, imparts no greater, and perhaps less clarity than does the word "lawsuit." Even so, the Commissioner utilized both terms in the text of the buyer's guide in a manner which should alleviate the confusion, if any, a consumer might have from prior public reference to the verbal threshold terminology. By defining "verbal threshold" in the buyer's guide, the Commissioner made clear "verbal" and "lawsuit" are used synonymously.
Similarly, the Commissioner's reference to the "basic limit" in the coverage selection form is consonant with the legislative "basic tort option." Thus, it does not countervail any legislative word choice. Moreover, any possibility of confusion created by the terms used is alleviated by the specific recitation of the statutory language describing the limited types of injury included in the basic tort option. Under these circumstances, the Commissioner's word choice evidences no basis on which to conclude the regulations contain an inherent bias or confusion, or any other ground for invalidation.
More importantly, it is evident from both the plain language of the statute and the legislative history that the basic tort option  lawsuit threshold option  has a favored status. As previously discussed, spiraling insurance premiums compelled the legislature to seek out a means for reducing them. The Legislature gave to the consumer the choice of a limited right to sue and a lower premium, or no limitation and a higher premium. In doing so, it understandably gave the lesser premium option favored status as indicated by the language "basic tort option" and by the fact that the failure to make an election meant the lower premium option. Thus, while we do not read the buyer's guide and coverage selection form to give *586 the basic tort option an untoward bias, it is more than justifiable for the Commissioner to give it a favored position.
Moreover, we find no justifiable basis for concluding the Commissioner acted improperly when he required the coverage selection form to contain a provision referring consumers to their insurance companies in the event of questions on coverage. Plaintiff argues it is improper because the Act immunizes an insurer or an insurance producer from liability "in an action for damages on account of the election of a tort option by a named insured." N.J.S.A. 39:6A-8.1e. Since the tort options for individual consumers implicate premium rating criteria that are beyond the ken of the average person, or for that matter the average attorney, those items can best be explained by the carrier or its representative. That the Legislature saw fit to immunize the carriers, we view as nothing more than an effort to forestall another body of litigation in an already overburdened court system. Thus, we find nothing invidious or improper in the suggestion to contact the insurance carrier or insurance producer.
Finally, any other contentions inferentially raised in the course of the petition of appeal, affidavits filed in support thereof, or otherwise, we find entirely without merit. R. 2:11-3(e)(1)(D) and (E).
We find it appropriate to comment on our approach to the contentions raised. We have not specifically distinguished plaintiff's contentions as they relate to the originally challenged regulations and the modified regulations now in force. We have taken this approach because plaintiff's essential contentions seemingly overlapped both versions. In doing so, however, we recognize consumers receiving the guide and form as proscribed by the originally proposed regulations may have found it necessary to consult with the carrier or insurance producer for clarification. However, as plaintiff concedes in his supplemental brief, the Commissioner modified the original version to make clear the effect the election had on the bodily *587 injury premium. That change and others made as the result of public comment and on the Commissioner's own initiative, resulted in clarifications in the regulations to assist the consumer, and suggest that they will be reviewed and modified in the future as further need for clarification is determined.
In sum, we find little substance to plaintiff's contentions. The regulations comport sufficiently with the legislative language to constitute a valid exercise of the Commissioner's regulatory authority. Plaintiff neither overcame the presumptive validity of the regulations nor demonstrated any other basis for our invalidating the regulations in whole or in part.
Affirmed.
NOTES
[1] Governor Kean, in a Reconsideration and Recommendation Statement that dealt with a compromise which led to final enactment of the Act and delineated the purposes and distinctions of the tort options, stated:

[A] better compromise than that contained in the present bill, and one which can be supported and passed in both Houses, has been reached. That compromise is to make the verbal threshold the basic liability coverage in every automobile insurance policy the law of the land in New Jersey. At the same time, individual insureds will be permitted to opt for a monetary threshold, at a higher cost, if they so choose. I recommend adoption of a zero dollar threshold option. In effect, the zero dollar threshold will allow individuals to opt into a pure fault liability system, a choice which will be reflected in their higher premiums. The purpose of the zero dollar option is to remove the incentive to inflate medical bills  thereby placing an unnecessary burden on PIP coverage  in order to reach some specified monetary threshold. I believe the citizens of New Jersey recognize that when their medical bills are being promptly paid, without regard to fault, they lose next to nothing in relinquishing the ability to sue for pain and suffering for non-serious injuries only and, consequently, the vast majority will maintain the base verbal threshold. The verbal threshold contained in this recommendation is patterned after that in force in New York State (See New York Insurance Law §§ 5102, 5104). This verbal threshold specifically sets forth those injuries which will be considered "serious." Lawsuits for non-economic injuries, such as pain and suffering, will be allowed for these enumerated "serious injuries" only. It is my intention that the term "serious injury," as defined in this recommendation, shall be construed in a manner that is consistent with the New York Court of Appeals' decision in Licari v. Elliot, 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982). Whether a plaintiff has sustained a "serious injury" must be decided by the court, and not the jury. Otherwise, the bill's essential purpose of closing the courthouse door to all lawsuits except those involving bona fide serious injuries will be diluted and the bill's effectiveness will be greatly diminished. In addition, strict construction of the verbal threshold is essential; any judicial relaxation of this plain language will impede the intent of maintaining the substantial benefits of no-fault at an affordable price. [Statement of Governor Kean, Senate Bill 2637 (3d Reprint) L. 1988, c. 119.]
[2] This language is a slight change from the law prior to January 1, 1989. In particular, it added the clause "as well as options afforded by the insurer."
[3] With the filing of the notice of appeal, plaintiff sought an interim order directing the Commissioner to require "all insurance companies writing automobile policies in the state to recall coverage selection forms which have been executed and returned to the carriers between January 1, 1989 through date of the [Court] order and to reissue new coverage selection forms advising the proposed policyholders of the exact costs with respect to the policy premium pertaining to the selection of the `No Tort Threshold' option versus the `Verbal Threshold' option." We denied the interim relief and set an expedited briefing schedule and early oral argument date.