604 A.2d 640

MAURICE S. KAPROW, PETITIONER–APPELLANT, v. BOARD OF EDUCATION OF BERKELEY TOWNSHIP, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 4, 1992—Decided March 25, 1992.

78

Before Judges MICHELS, O'BRIEN and HAVEY.

*John J. Ross* argued the cause for appellant (*Lomurro, Davison, Eastman & Munoz,* attorneys, *John J. Ross* and *Suzette N. Berrios,* on the brief).

*Milton H. Gelzer* argued the cause for respondent Board of Education of Berkeley Township (*Gelzer, Kelaher, Shea, Novy & Carr,* attorneys, *Kathleen W. Hofstetter,* on the brief).

*Arlene Goldfus Lutz,* Deputy Attorney General, argued the cause for respondent State Board of Education (*Robert J. Del Tufo,* Attorney General, attorney, *Mary C. Jacobson,* Deputy Attorney General, of counsel, *Arlene Goldfus Lutz,* on the brief).

*Charles W. Hutchinson, Jr.* argued the cause for respondent-intervenor Robert Ciliento (*Gilmore & Monahan,* attorneys, *Charles W. Hutchinson,* on the brief).

*Stephen B. Hunter* argued the cause for respondent-intervenor Elementary Teaching Staff Members (*Klausner, Hunter & Cige,* attorneys, *Stephen B. Hunter,* of counsel and on the brief).

*Gregory P. McGuckin* argued the cause for respondent-intervenor Sheila C. McGuckin (*Dasti, Murphy & Wellerson,* attorneys, *Gregory P. McGuckin,* on the brief).

*Wayne J. Oppito* argued the cause for respondent-intervenors Paul Polito and Arlene Lippincott.

O'BRIEN, J.A.D.

Maurice S. Kaprow, a tenured assistant superintendent previously employed by the defendant Board of Education of Berkeley Township (Local Board) appeals from a decision of the State Board of Education (State Board) dismissing as untimely his petition claiming rights to several positions in the school district by virtue of his tenure. We affirm.

On October 5, 1976, Kaprow was hired by the Local Board as an Assistant Superintendent in Charge of Curriculum. At that time, he had an administrative certificate issued pursuant to *N.J.A.C.* 6:11–2.3 with endorsements as a school administrator, principal and supervisor under *N.J.A.C.* 6:11–9.3(a)(b) and (c).[1]

On October 5, 1979, Kaprow acquired tenure in the position of Assistant Superintendent under *N.J.S.A.* 18A:28–5. From February 10 through September 1, 1980, Kaprow served as Acting Superintendent of Schools, Chief Administrator for the district. During the summers of 1977 through 1980, he served as principal of the summer school.

On February 5, 1980, the Local Board changed Kaprow's job title to Assistant Superintendent, and effective June 30, 1981, his employment was terminated as a result of a reduction in force (RIF) pursuant to *N.J.S.A.* 18A:28–9. At that time, he was the only person tenured as an Assistant Superintendent in the school district. In response to his written request to be kept apprised of positions to which he would be entitled by virtue of his tenure, Kaprow was advised by letter of September 22, 1981 from the Local Board's attorney,

---

[1]He contends that during the course of his employment with the Local Board he also acquired "certification as elementary school teacher." We assume this means that he acquired an instructional certificate pursuant to *N.J.A.C.* 6:11–2.3 with an endorsement in elementary education pursuant to *N.J.A.C.* 6:11–6.2(a)6.

As you were the only Assistant Superintendent at the time of the abolishment of the position, it is clear that you would have the right to that position in the event of its being re-established. With respect to your being notified of the re-creation of the position of Assistant Superintendent or of a position of same responsibility, but perhaps by a different title, the Board Secretary would write to your last address on record. For the moment, we consider your August 31, 1981 letter setting forth your address as P.O. Box 1734, Maitland, Florida 32751, as your present address.

At no time thereafter was Kaprow advised as to any position for which he might qualify by virtue of his tenure, although he states his address has not changed.

On February 23, 1988, Kaprow inquired of the Local Board's secretary whether any administrative appointments had been made by the Local Board subject to his RIF. On the same day, the Board secretary advised Kaprow that Robert Ciliento had been appointed Assistant Superintendent of Administrative Services on September 9, 1986, which position he held until July 1, 1987, at which time he was appointed Superintendent of Schools, and that on July 1, 1987, the Local Board had appointed Sheila McGuckin to the position of District Supervisor of Elementary Education.

On February 28, 1988, petitioner replied to the Board secretary's letter asserting his right to the positions of Assistant Superintendent and/or District Supervisor of Elementary Education, in which he stated:

The duties which I performed as Assistant Superintendent have been transferred to a new position entitled District Supervisor of Elementary Education.

He sought the Board's compliance with the statutes respecting tenure by reinstating him retroactively with full back pay and benefits. Since he received no response to that letter, Kaprow wrote a second letter on April 25, 1988, again asserting his claim and soliciting resolution of the matter amicably. However, he stated,

I do not feel that any constructive purpose will be served in an adversarial approach. Therefore, I would appreciate hearing from the Board by May 16, 1988.

The Local Board did not respond to this letter by May 16, 1988, the date fixed. However, its attorney wrote a letter to Kaprow

dated June 14, 1988, replying to both the February 28 and April 25, 1988 letters. The attorney acknowledged that in September 1986 Ciliento was appointed Assistant Superintendent for Administrative Services, allegedly with "substantially different duties than you had previously performed." When the Superintendent's position became vacant, Ciliento was appointed to that position and no one has been appointed to the temporary position of Assistant Superintendent for Administrative Services. Counsel stated:

> I am sure you are aware that the generic term "assistant superintendent" is really meaningless until we look to the duties performed by the officeholder.
>
> The duties that were assigned to you during your term as Assistant Superintendent continue to be distributed among the building principals and other supervisory personnel. There is no equivalent to the former position, hence, there would be no basis for your reinstatement in the District especially retroactively with full pay and benefits.

Kaprow filed his verified petition with the Commissioner of Education (Commissioner) on August 1, 1988, asserting his claim to the position of Assistant Superintendent in Charge of Administrative Services and/or District Supervisor of Elementary Education. Pursuant to *N.J.S.A.* 52:14B-1 to 15 and *N.J.S.A.* 52:14F-2, it was referred to the Office of Administrative Law for disposition. Kaprow amended his petition on January 4, 1989, alleging for the first time that the 1981 RIF was improper and not for the purposes articulated by the Local Board and asserting his right to various other positions which the Local Board had filled with nontenured people.

The Local Board answered the petition and moved to compel joinder of necessary parties. Thereafter, the Administrative Law Judge (ALJ) permitted several other parties to intervene. On October 12, 1989, the ALJ granted partial summary judgment, concluding that Kaprow was not entitled to the positions of teacher, principal and/or superintendent, but that there was a factual issue as to his right to the positions of Assistant Superintendent of Administrative Services and District Supervisor of Elementary Education.

The Commissioner reviewed the initial decision of the ALJ and considered the exceptions filed by the parties and rendered his decision on November 29, 1989, agreeing with much of the ALJ's decision. He agreed that petitioner's claim to the position of Superintendent and various elementary school positions was properly dismissed since tenure "attaches to the position in which the requisite service was rendered." His service as Acting Superintendent of Schools for several months was insufficient for him to acquire tenure in that position and:

> The Commissioner rejects as unfounded in law and contrary to sound educational policy the notion that tenure attaches to every endorsement on every certificate held by a teaching staff member regardless of the position in which he or she acquired tenure.

However, the Commissioner disagreed with the ALJ that insufficient evidence had been presented to support petitioner's claims regarding the abolition of his original position, concluding instead that his claim was untimely. As to petitioner's claim of tenure as a principal, the Commissioner found that his service would have attached to his tenure as Assistant Superintendent, and furthermore that he had not served a sufficient length of time to acquire tenure under *N.J.S.A.* 18A:28–5 or 6.

As to petitioner's contention concerning the position of District Supervisor of Elementary Education, the Commissioner said:

> Second, the Commissioner disagrees with the ALJ that petitioner might have an entitlement to the position of District Supervisor of Elementary Education based on a possible identity of duties with petitioner's former position. The position of supervisor is, by virtue of a distinct certificate pursuant to *N.J.A.C.* 6:11–10.4 [now 6:11–9.3] a separately tenurable one in which petitioner has never served, so that petitioner would have no more right to Intervenor McGuckin's position than to the superintendency or an elementary teaching position. This claim should have been dismissed and the Commissioner hereby dismisses it, as a matter of summary judgment.

Finally, the Commissioner agreed with the ALJ that Kaprow acquired tenure as an Assistant Superintendent. However,

> [The ALJ] errs in specifying that petitioner acquired tenure only in the position of Assistant Superintendent for Curriculum. Tenure accrues in the positions enumerated in *N.J.S.A.* 18A:28–5, so that petitioner's tenure is not limited to curriculum positions, but would include any assistant superintendency within

the scope of his certificate as set forth in *N.J.A.C.* 6:11–10.4 [now 6:11–9.3] (a limitation that would preclude him from claiming a position of Assistant Superintendent for Business Affairs). Thus, petitioner is entitled as a matter of law to the position of Assistant Superintendent of Administrative Services if that position, vacant since mid–1987 and purported to have been a one-time temporary appointment, is filled at any point subsequent to this decision.

The Commissioner noted the failure of the Local Board to notify the petitioner of the availability of the position of Assistant Superintendent of Administrative Services in September 1986 and directed the Board, to "henceforth be more conscientious in fulfillment of its obligations pursuant to *N.J.S.A.* 18A:28–12."

The State Board affirmed the Commissioner's determination to dismiss petitioner's appeal in its entirety, but did so on the ground that the appeal was untimely. While we affirm the State Board's decision substantially for the reasons given by it in its decision of January 9, 1991, we deem it necessary to address some of the arguments advanced by Kaprow.

*N.J.A.C.* 6:24–1.2(c) provides:

The petitioner shall file a petition no later than the 90th day from the date of receipt of the notice of a final order, ruling or other action by the district board of education, individual party, or agency, which is the subject of the requested contested case hearing.

The State Board ruled that

The February 23 [1988] letter from the Board Secretary provided Petitioner with clear and unambiguous notice of the final action by the Board which is the subject of Petitioner's appeal—the employment of individuals allegedly in violation of his tenure and seniority rights.

Thus, the Board concluded that Kaprow's petition filed on August 1, 1988, was time barred under *N.J.A.C.* 6:24–1.2.

Kaprow contends that the statute of limitations defense should have been precluded because: (1) it was not contained in the prehearing order;[2] (2) *N.J.A.C.* 6:24–1.2(b) [now (c)] has been improperly promulgated by the State Board; (3) the 90–day limitation is inapplicable to his statutory claim; and (4) the

---

[2]We find it unnecessary to comment upon this contention, which we conclude is without merit. *See R.* 2:11–3(e)(1)(D).

circumstances warrant relaxation of the rule pursuant to *N.J.A.C.* 6:24-1.15. He also contends (5) the 90 days did not begin to run until the June 14, 1988 letter to him from the Local Board's attorney and cites the Local Board's failure to maintain a preferred eligibility list as required by *N.J.S.A.* 18A:28-12.

While these arguments are persuasively advanced by petitioner Kaprow, we conclude that in the final analysis they are without merit. The Legislature specifically vested jurisdiction over controversies and disputes under school law in the Commissioner. *N.J.S.A.* 18A:6-9; *Hinfey v. Matawan Regional Board of Education,* 77 *N.J.* 514, 525, 391 *A.2d* 899 (1978). The Legislature granted the Commissioner concomitant powers necessary to exercise his quasi-judicial authority. *See N.J.S.A.* 18A:4-31 (authorizing him to administer oaths, take affidavits without charge, and examine witnesses under oath); *N.J.S.A.* 18A:6-20 (authorizing the Commissioner to issue subpoenas in disputes or controversies); *N.J.S.A.* 18A:6-28 (establishing procedures for appealing the Commissioner's decisions). The State Board has general power to make, alter and repeal rules for its own government and for implementing and carrying out the school laws of this state under which it has jurisdiction. *N.J.S.A.* 18A:4-15.

With regard to rules governing controversies and disputes, the Legislature has provided in *N.J.S.A.* 18A:6-26,

> The state board and the commissioner with the approval of the state board ... and any other board or body having jurisdiction over the prosecution and hearing of controversies and disputes under the school laws or any rules made thereunder shall have power to make rules governing the prosecution and hearing of controversies and disputes, under the school laws and the rules governing the particular prosecution or dispute when exercising original or appellate jurisdiction therein.

It is thus clear that the legislative delegation to the State Board and the Commissioner of the power to establish rules relating to the hearing of controversies clearly encompasses the right to establish when and the time within which those controversies may be brought before the Commissioner.

 The grant of an express power by the Legislature is always attended by such incidental authority as is fairly and reasonably necessary or appropriate to make it effective, and the authority granted to an administrative agency should be construed so as to permit the fullest accomplishment of the legislative intent. *Mulligan v. Wilson,* 110 *N.J.Super.* 167, 171, 264 *A.*2d 745 (App.Div.1970). The grant of authority to an administrative agency is to be liberally construed to enable the agency to accomplish the Legislature's goals. *Barry v. Arrow Pontiac, Inc.,* 100 *N.J.* 57, 70, 494 *A.*2d 804 (1985). Administrative agencies have wide discretion in selecting the means to fulfill the duties the Legislature has assigned to them. *Emmer v. Merin,* 233 *N.J.Super.* 568, 581, 559 *A.*2d 845 (1989), *certif. denied,* 118 *N.J.* 181, 570 *A.*2d 950 (1989). A function of a statute of limitations is a measure of repose. *Ochs v. Federal Insurance Co.,* 90 *N.J.* 108, 447 *A.*2d 163 (1982). If there were no time limitation established, there would be no repose in education matters.

 Kaprow concedes that the Legislature may delegate the power to promulgate rules governing controversies and disputes, but argues that such delegation must provide standards. *N.J.S.A.* 18A:6–26 through 29 do provide standards. Jurisdiction over the prosecution and hearing of controversies and disputes has been delegated to the State Board and the Commissioner, together with the power to make rules governing the prosecution and hearing of controversies and disputes. Section 27 provides that anyone aggrieved by the decision of the Commissioner may appeal to the State Board, and section 28 specifically provides that the appeal to the State Board must be taken within 30 days after the decision appealed from is filed. This latter section reflects the legislative concern with a statute of limitations on appeals from the Commissioner to the State Board. The Legislature specifically fixed the time for such an appeal, but did not set a time for the filing of the initial petition with the Commissioner. Rather, the Legislature gave the Commissioner and the State Board power to make the rules govern-

ing the prosecution and hearing of controversies. It follows that the Legislature delegated the power to the State Board and Commissioner to promulgate a rule limiting the time period within which to initiate a contested case for the Commissioner's determination. *N.J.A.C.* 6:24–1.2(c) reflects the exercise of that power by the State Board.

Enforcement of the 90–day limitation has been the subject of many appeals to us as well as to the Supreme Court. *See, e.g., Lavin v. Hackensack Bd. of Ed.,* 90 *N.J.* 145, 447 *A.*2d 516 (1982), and *North Plainfield Educ. Ass'n v. Bd. of Educ.,* 96 *N.J.* 587, 476 *A.*2d 1245 (1984). An agency's construction of a statute over a period of years without legislative interference is to be given great weight as reflecting conformity with legislative intent. *Malone v. Fender,* 80 *N.J.* 129, 402 *A.*2d 240 (1979). The 90–day limitation for initiating a controversy before the Commissioner has been in effect for many years and reviewed many times by us and by the Supreme Court, yet the Legislature has not expressed any disagreement with the State Board and Commissioner's construction of the powers delegated to it by the Legislature in *N.J.S.A.* 18A:6–26. We find no merit to Kaprow's contention that the limitation established by *N.J.A.C.* 6:24–1.2(c) is an improper delegation of power by the Legislature.

We also find no merit to Kaprow's contention that the 90–day limitation does not apply to him because a tenured employee's rights to reinstatement are statutory. He arrived at this contention by misapplication of *Lavin,* which held that where a petition has been filed to settle a controversy involving an absolute statutory entitlement or right, the 90–day limitation is inapplicable. However, in *North Plainfield,* the Supreme Court explained the reason for the *Lavin* decision as follows:

The legislative purpose of *N.J.S.A.* 18A:29–11 is to reward veterans for service to their country in time of war. The reward takes the form of crediting the military service as teaching experience even though there is no functional relationship between the two. The credit has the effect of increasing the number of dollars to which the teacher who is a veteran is entitled. The

emolument is not for services rendered or to be rendered for school teaching as such. It was established by the Legislature as a reward or bonus for service in the military, and not for performance as a teacher. Accordingly, the payment should be considered as a statutory entitlement, rather than as an element of the employment contract. That being so, the statute of limitations is inapplicable. [96 *N.J.* at 593–594, 476 *A.*2d 1245, *citing Lavin,* 90 *N.J.* at 151, 447 *A.*2d 516]

The Court then distinguished *Lavin* as follows:

From that perspective, salary increments accruing under *N.J.S.A.* 18A:29–11 are distinctly different from those awarded under *N.J.S.A.* 18A:29–8. The annual increment under *N.J.S.A.* 18A:29–11 accrues because of time spent in military service without regard to performance as a teacher. By contrast, the annual increment under *N.J.S.A.* 18A:29–8 is subject to annual evaluation of teacher performance. Consequently, that Court's analogy to an annual increment to the statutory entitlement for veterans is invalid. [96 *N.J.* at 594, 476 *A.*2d 1245]

While there is a statutory basis for tenure, *see N.J.S.A.* 18A:28–5; *see also Spiewak v. Rutherford Bd. of Ed.,* 90 *N.J.* 63, 447 *A.*2d 140 (1982), and rights upon reduction in the school's work force, *N.J.S.A.* 18A:28–9, just as there is a statutory basis for the salary increment involved in *North Plainfield,* the issue herein relates to· administration of the school system, *i.e.,* the termination of an assistant superintendent for reasons related to expenses and efficiency of the system, and the role of petitioner as an Assistant Superintendent. It does not concern credits or rights to which he is entitled under statutes independent or irrespective of the administration of the school system or his performance or standing as Assistant Superintendent. Whether the benefit flowing from a statute is to be considered a statutory entitlement or a term of the public employee's contract of employment depends upon the nature of the benefit and its relationship to the employment. Stating the problem in terms of incorporation in the employment contract or as a statutory benefit begs the question. Rather, attention should be directed to the purpose of the statute and its relevance and materiality to the employment. *Lavin, supra,* 90 *N.J.* at 150, 447 *A.*2d 516. We conclude that issues resulting from a RIF in a local school district do not give rise to statutory entitlement as in *Lavin,* where there was no

"functional relationship" between the military service credit required by statute and Ms. Lavin's experience as a teacher. *See* 90 *N.J.* at 151, 447 *A.*2d 516. Here, unlike *Lavin* (but as in *North Plainfield*), tenure and reduction in benefits have a "relationship to the service to be rendered [by petitioner] as an employee." *Lavin, supra,* 90 *N.J.* at 150, 447 *A.*2d 516. Thus, we conclude that *N.J.A.C.* 6:24–1.2(c) is applicable to this case.

We disagree with Kaprow's contention that the Local Board's lawyer's letter of June 14, 1988 constituted the order, ruling or action taken by the Local Board on his claim. The final order, ruling or other action by the Local Board occurred when it appointed nontenured persons to positions to which Kaprow claims tenure rights. Ciliento was appointed Assistant Superintendent of Administrative Services in 1986 and Ms. McGuckin was appointed District Supervisor of Elementary Education in 1987. However, because of the Local Board's unexplained failure to create a preferred eligibility list at the time Kaprow was riffed pursuant to *N.J.S.A.* 18A:28–12, and failure to notify him of these openings pursuant to the Local Board's attorney's letter dated September 22, 1981, Kaprow had no notice of the openings nor of the Board's final order, ruling or other action filling those openings. But, on February 23, 1988, Kaprow was clearly advised by the Local Board's secretary of these appointments, to which he promptly responded by asserting his claims. Thus, we agree with the State Board that it was at that time that the controversy or dispute came into being and Kaprow was obliged, pursuant to *N.J.A.C.* 6:24–1.2(c), to file his petition no later than 90 days from the receipt of the letter from the Local Board's secretary dated February 23, 1988. Yet, he did not file the petition until August 1, more than five months after receipt of the February 23 letter and two and a half months after the deadline he himself had established for the Local Board to respond in his follow-up letter of April 25, 1988. Thus, his claims were time barred as found by the State Board.

Kaprow argues that in the event the 90-day time limitation of *N.J.A.C.* 6:24-1.2(c) applies, his case falls within the purview of *N.J.A.C.* 6:24-1.15 authorizing the Commissioner to relax the rules in his discretion, "where a strict adherence thereto may be deemed inappropriate or unnecessary or may result in injustice." The Commissioner, to whom the authority to relax the rules has been delegated, did not base his decision on the 90-day rule, except as to petitioner's allegations regarding the abolition of his original position in June 1981, and thus he did not consider relaxation of the rule. Rather, he addressed the substance of petitioner's claim. However, the State Board did consider relaxation and found no circumstances warranting such relaxation. The State Board specifically found that an individual's attempt to negotiate with the Local Board so as to alter its determination does not in itself toll the period of limitations. Citing from its own decision in *Polaha v. Buena Regional School Dist.*, later remanded by us at 212 *N.J.Super.* 628, 515 *A.*2d 1271 (App.Div.1986), the State Board quoted:

> Although a petitioner may in some instances successfully negotiate so as to alter that determination, such attempts can not be viewed as compelling excusal from the procedural requirements that must be met in order to entitle him to adjudication of his legal rights. To hold otherwise would seriously undermine the purpose for which those requirements are imposed.

We disagreed most emphatically with the State Board's determination in *Polaha* that there were no circumstances present in that case which warranted relaxation. We stated:

> On the contrary, as pointed out by the Administrative Law Judge, because of the negotiations between Polaha and the Board to try to agree on an acceptable position this may be an appropriate case for the exercise of authority under *N.J.A.C.* 6:24-1.19 [now 6:24-1.15] to relax the 90-day rule. [212 *N.J.Super.* at 635, 515 *A.*2d 1271]

However, our conclusion in *Polaha* was based upon ongoing negotiations between the employee and the Board.

Kaprow's reliance upon our opinion in *Stockton v. Bd. of Educ. of City of Trenton*, 210 *N.J.Super.* 150, 509 *A.*2d 264 (App.Div.1986), is misplaced. There, we specifically found that issuing the paycheck in the wrong amount was neither an order nor a ruling and thus fell into the category of other action, but

we found that the unilateral attempt by an employee to correct a three-year-old error could not be categorized as a "controversy or dispute" within the meaning of *N.J.A.C.* 6:24–1.2.

In this case, the Board had clearly made the disputed appointments of which Kaprow had knowledge on February 23, 1988, and thus a controversy or dispute immediately existed notwithstanding his patience in awaiting answers to his two letters. There were no negotiations. The Local Board simply stonewalled Kaprow by not answering his letters of February 28 and April 25 until their attorney did so on June 14, 1988. As the State Board noted, in his April 25 letter, Kaprow said, "Therefore, I would appreciate hearing from the Board by May 16, 1988." The State Board found:

> Such deadline established by Petitioner was approximately one week prior to the expiration of the 90–day period running from the receipt of the February 23 letter. Yet, despite the fact that he received no response until June 14, Petitioner failed to file the instant action until August 1, more than five months after receipt of the February 23 letter and two and a half months after the deadline he established for a Board response.

While we find it difficult to understand the Local Board's failure to comply with the statutory requirement of creating a preferred list and of notifying Kaprow of the openings, followed by their unexplained failure to promptly respond to his letters, we cannot disagree with the State Board's conclusion that Kaprow deliberately slept on his rights by his failure to file his petition within 90 days.

While we affirm the State Board's decision based on its application of the 90–day rule, which we conclude was properly adopted by the Commissioner and the State Board pursuant to statutory authority, we express no opinion as to the correctness of the Commissioner's comment concerning the appointment of McGuckin as District Supervisor of Elementary Education, *i.e.*, "The position of Supervisor is, by virtue of a distinct certificate pursuant to *N.J.A.C.* 6:11–10.4 [3] a separately tenurable one in

---

[3]Now *N.J.A.C.* 6:11–9.3.

which petitioner has never served," about which we have some reservations. *See Ellicott v. Bd of Educ.*, 251 *N.J.Super.* 342, 348, 598 *A.*2d 237 (App.Div.1991).

We thoroughly agree with the Commissioner that Kaprow is entitled to the position as Assistant Superintendent for Administrative Services if that position is reactivated. It has been vacant since 1987 when the incumbent was appointed Superintendent of Schools. We agree that "Assistant Superintendent" is a separately tenurable position under *N.J.S.A.* 18A:28–5 and that Kaprow's tenure protection extends to any Assistant Superintendent assignment within the scope of his certificate.[4] We thus disagree with the State Board's decision declining to address his possible future entitlement on the basis of the record before it. In the face of this Local Board's track record in failing to keep Kaprow advised of appointments to positions to which he may be entitled by virtue of his tenure, we endorse and underscore the direction of the Commissioner that the Local Board henceforth be more conscientious in fulfillment of its obligations pursuant to *N.J.S.A.* 18A:28–12. We therefore order the Local Board to notify Kaprow specifically of any vacancy[5] that may occur in the future in a position as an Assistant Superintendent within his certificate and its endorsements and any position that may have job specifications identical or similar to job specifications for his tenured position.

Affirmed.

---

[4]Subsequent to oral argument, we were advised by the attorney for the Local Board that there will be a vacancy in the position of Superintendent of Schools as of April 4, 1992, and that the Board is undertaking a search to fill the position. We express no opinion as to Kaprow's right to that position.

[5]We recognize that the Local Board contends that at the time Kaprow was riffed there were six administrative positions which were reduced to five by the RIF, and that currently there are still only five administrative positions, although they have varying labels.