622 A.2d 237

MAURICE KAPROW, PETITIONER–APPELLANT, v. BOARD OF EDUCATION OF BERKELEY TOWNSHIP, RESPONDENT–RESPONDENT.

Argued January 19, 1993—Decided April 8, 1993.

*Duane O. Davison* argued the cause for appellant (*Lomurro, Davison, Eastman & Munoz,* attorneys).

*Kathleen W. Hofstetter* argued the cause for respondent.

*Arlene Goldfus Lutz,* Deputy Attorney General, argued the cause for respondent, State Board of Education (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Deputy Attorney General, of counsel).

*Wayne J. Oppito* argued the cause for intervenors-respondents Paul Polito and Arlene Lippincott.

The opinion of the Court was delivered by

GARIBALDI, J.

Effective June 30, 1981, Maurice Kaprow's employment as tenured assistant superintendent was terminated by the Berkeley Township Board of Education (the "Local Board") as a result of a reduction in force ("RIF") pursuant to *N.J.S.A.* 18A:28–9. The primary question presented in this appeal is whether Kaprow's petition to the Commissioner of Education (the "Commissioner") for reinstatement is time-barred by *N.J.A.C.* 6:24–1.2(c). That regulation requires that such petitions be filed "no later than the 90th day from the date of receipt of the notice of a final order, ruling or other action by

the district board of education ... [that] is the subject of the requested contested case hearing."

The Local Board failed to notify Kaprow of his post-RIF rights to certain positions in the school district despite its statutory duty to do so. Five months after learning of that failure, Kaprow petitioned the Commissioner seeking to be reinstated with back pay to one of several positions in the school district. The State Board of Education (the "State Board") dismissed his petition as untimely pursuant to *N.J.A.C.* 6:24-1.2, and the Appellate Division affirmed. 255 *N.J.Super.* 76, 604 *A.*2d 640 (1992). We granted Kaprow's petition for certification, 130 *N.J.* 16, 611 *A.*2d 654 (1992), and now affirm. We hold that *N.J.A.C.* 6:24-1.2(c) applies and bars Kaprow's petition for reinstatement.

I

Kaprow was hired by the Local Board in 1976 as an Assistant Superintendent in Charge of Curriculum. On October 5, 1979, Kaprow acquired tenure in the position of assistant superintendent. For approximately seven months in 1980, Kaprow served as Acting Superintendent of Schools, Chief Administrator for the district. During the summers of 1977 through 1980, he served as principal of the summer school.

On February 5, 1980, the Local Board changed Kaprow's job title to Assistant Superintendent. Effective June 31, 1981, the Local Board terminated Kaprow's employment pursuant to *N.J.S.A.* 18A:28-9. That statute grants local boards of education the right "to reduce the number of teaching staff members * * * for reasons of economy or because of reduction in the number of pupils or of change in the administrative or supervisory organization * * * or for other good cause." At the time of his termination, Kaprow was the only tenured assistant superintendent in the school district. *N.J.S.A.* 18A:28-12 provides, in pertinent part:

> If any teaching staff member shall be dismissed as a result of such reduction, such person shall be and remain upon a preferred eligible list in the order of seniority for reemployment whenever a vacancy occurs in a position for which such person shall be qualified.

In response to Kaprow's written request, the Local Board's counsel, in a letter dated September 22, 1981, informed him:

> You ask what seniority rights you retained in the Berkeley Township School District. As you were the only Assistant Superintendent at the time of the abolishment of the position, it is clear that you would have the right to that position in the event of its being reestablished. With respect to your being notified of the re-creation of the position of Assistant Superintendent or of a position of same responsibility, but perhaps by a different title, the Board Secretary would write to your last address on record. For the moment, we consider your August 31, 1981, letter setting forth your address as PO Box 173, Maitland, Florida 32751, as your present address.

Due to the Local Board's failure to keep a list of RIFed employees, Kaprow received no notice from the Local Board of any eligible positions until he requested that information in February 1988.

On February 23, 1988, Kaprow asked the Local Board's secretary, Elaine M. Clay, whether any positions for which he held tenure rights had been established subsequent to his termination. On the same day, Ms. Clay wrote to Kaprow on note paper headed, "From the desk of Elaine M. Clay, Board Secretary," informing him that on September 9, 1986, Robert Ciliento had been appointed Assistant Superintendent of Administrative Services, and that on July 1, 1987, Sheila McGuckin had been appointed District Supervisor of Elementary Schools.

In a February 28, 1988, letter to the Local Board, Kaprow asserted his right to both those positions. He wrote:

> I have recently become aware that the position of Assistant Superintendent, to which I retain tenure rights, was reinstated as late as September 1986, if not before. Additionally, the duties which I performed as Assistant Superintendent have been transferred to a new position entitled District Supervisor of Elementary Education.

Kaprow requested that the Local Board reinstate him retroactively with full back pay and benefits in compliance with *N.J.S.A.* 18A:28–12. The Local Board did not reply. Kaprow sent a second letter on April 25, 1988, stating that he wished to

resolve the dispute amicably and that he would appreciate a response by May 16, 1988.

When the Local Board's attorney finally responded to Kaprow's letters on June 14, 1988, he acknowledged in his letter that two positions had been created and filled; however, he asserted that those positions called for substantially different duties from those that Kaprow had previously performed. In addition, the attorney pointed out that Robert Ciliento had subsequently been appointed Superintendent. The attorney noted that since that appointment no one had been appointed to the "temporary position of Assistant Superintendent for Administrative Services." Because the position that Kaprow had formerly held had no functional equivalents, the attorney concluded that Kaprow's RIF rights did not attach and that no basis existed for his reinstatement.

On August 1, 1988, Kaprow filed a verified petition with the Commissioner asserting his claim to the position of Assistant Superintendent of Administrative Services and/or District Supervisor. The matter was referred to the Office of Administrative Law. On December 16, 1988, Kaprow amended his petition, alleging for the first time that the 1981 RIF was improper and made in bad faith. He also asserted his right to various other positions that the Local Board had filled with non-tenured people during the seven-year period. Because of Kaprow's claim to their positions, Ciliento, McGuckin, a principal, and thirty-one elementary teaching staff members intervened in the matter.

The Administrative Law Judge ("ALJ") granted partial summary judgment in favor of the intervenors on the grounds that Kaprow had not acquired any tenure or seniority rights to the positions of teacher, principal, and/or superintendent. The ALJ also dismissed the bad-faith claim for insufficient evidence. He did, however, find that Kaprow had acquired tenure and seniority status in the position of Assistant Superintendent in Charge of Curriculum, but that a factual issue existed concerning

Kaprow's right to the positions he had requested in his original petition, namely, Assistant Superintendent for Administrative Services and District Supervisor of Elementary Education.

On review of the ALJ's decision the Commissioner dismissed Kaprow's petition with prejudice. The Commissioner agreed with much of the ALJ's decision; however, he found that the bad-faith claim was untimely instead of unsupported. The Commissioner also found that the district-supervisor position had an insufficient identity of duties with Kaprow's former job, and dismissed his claim to that position. Finally, the Commissioner found that Kaprow had acquired tenure as an assistant superintendent of schools. However, he did not order Kaprow's appointment to that position because that position no longer existed. Because there was no emergent matter presented, the Commissioner did not rule on the timeliness of Kaprow's claim. The Commissioner concluded, however, that Kaprow would be entitled to the position of Assistant Superintendent for Administrative Services should it become reactivated in the future. The Commissioner also ordered the Local Board to be "more conscientious" in fulfilling its duty to notify RIFed employees of post-RIF positions.

The State Board affirmed the Commissioner's decision on the ground that Kaprow's petition had been untimely pursuant to *N.J.A.C.* 6:24–1.2. The State Board reasoned that because the February 23, 1988, letter from the Local Board secretary provided Kaprow with clear and unambiguous notice of the Local Board's final action, his petition filed on August 1, 1988, was time barred by the ninety-day limitations period of *N.J.A.C.* 6:24–1.2(c). The State Board also found that Kaprow's case presented no circumstances warranting relaxation of that regulation. Additionally, the State Board found that Kaprow was not entitled to the position of District Supervisor because that position had different duties. Finally, the State Board refused to rule on Kaprow's right to a future position as assistant superintendent, thus overruling the Commissioner's finding

that Kaprow would be entitled to such a position if it became reactivated.

The Appellate Division affirmed the State Board's decision concluding that *N.J.A.C.* 6:24–1.2(c) was applicable to Kaprow's petition. 255 *N.J.Super.* at 91, 604 *A.*2d 640. The court found that rights resulting from a RIF in a local school district do not give rise to a statutory entitlement, *id.* at 88–89, 604 *A.*2d 640; that *N.J.A.C.* 6:24–1.2(c) had been properly promulgated by the Commissioner and the State Board pursuant to statutory authority, *id.* at 87, 604 *A.*2d 640; and that the circumstances did not warrant relaxation of the rule pursuant to *N.J.A.C.* 6:24–1.15, *id.* at 90, 604 *A.*2d 640. However, the court did express reservations about the Commissioner's ruling that the position of district supervisor was distinct from Kaprow's former position as assistant superintendent. *Id.* at 92, 604 *A.*2d 640. The court underscored the Commissioner's direction that the Local Board "should be more conscientious in fulfilling its obligations pursuant to *N.J.S.A.* 18A:28–10." *Ibid.* The court also found that Kaprow was entitled to the position of Assistant Superintendent for Administrative Services if that position were reactivated, and the court specifically ordered the Local Board to notify Kaprow of any vacancy that might occur in the future in that position as well as any other positions that have job specifications identical to or similar to job specifications for his tenured position. *Ibid.*

## II

■■■ We first consider Kaprow's contention that the State Board and the Commissioner did not have the authority to promulgate *N.J.A.C.* 6:24–1.2(c). Administrative agencies are given wide discretion to determine the proper means to accomplish the Legislature's goals. *Cammarata v. Essex County Park Comm'n,* 26 *N.J.* 404, 411, 140 *A.*2d 397 (1958). We have long accorded substantial deference to agency regulations based on our recognition of the agency's presumed expertise.

*In re Amendment of N.J.A.C. 18:31B–3.31*, 119 *N.J.* 531, 543, 575 *A..*2d 481 (1990). Administrative regulations are presumptively valid, and anyone challenging such a regulation bears the burden of proving its invalidity. *Medical Soc'y v. New Jersey Dep't of Law and Pub. Safety*, 120 *N.J.* 18, 25, 575 *A.*2d 1348 (1990); *Bergen Pines County Hosp. v. New Jersey Dep't of Human Servs.*, 96 *N.J.* 456, 477, 476 *A.*2d 784 (1984). That presumption attaches if the regulation is within the authority delegated to the agency and is not on its face beyond the agency's power. *Medical Soc'y, supra*, 120 *N.J.* at 25, 575 *A.*2d 1348. Furthermore, "The grant of an express power by the Legislature is always attended by such incidental authority as is fairly and reasonably necessary or appropriate to make it effective, and the authority granted to an administrative agency should be construed so as to permit the fullest accomplishment of the legislative intent." *Mulligan v. Wilson*, 110 *N.J.Super.* 167, 171, 264 *A.*2d 745 (App.Div.1970); *see New Jersey Guild of Hearing Aid Dispensers v. Long*, 75 *N.J.* 544, 561, 384 *A.*2d 795 (1978); *Cammarata, supra*, 26 *N.J.* at 411, 140 *A.*2d 397.

The Legislature vested in the State Board the general authority "to make and enforce * * * rules * * * for implementing and carrying out the school laws of this state under which it has jurisdiction." *N.J.S.A.* 18A:4–15. Furthermore, the Legislature explicitly gave the Commissioner "the jurisdiction to hear and determine * * * all controversies and disputes arising under the school laws * * *." *N.J.S.A.* 18A:6–9. To exercise that authority, the Legislature granted the Commissioner several concomitant powers. *See N.J.S.A.* 18A:4–31 (authorizing the Commissioner to administer oaths, take affidavits, and examine witnesses under oath); *N.J.S.A.* 18A:6–20 (authorizing the Commissioner to issue subpoenas in disputes or controversies); *N.J.S.A.* 18A:6–28 (establishing procedures for appealing the Commissioner's decisions). More fundamentally, the Legislature enacted *N.J.S.A.* 18A:6–26, which delegates to the State Board and the Commissioner the "power to make rules govern-

ing the prosecution and hearing of controversies and disputes, under the school laws and the rules governing the particular prosecution or dispute when exercising original or appellate jurisdiction therein."

The Legislature's broad delegation of power to the Commissioner and the State Board, particularly *N.J.S.A.* 18A:6–26, encompasses the authority to establish a time limitation for the resolution of disputes under the school laws. The limitations period provides a measure of repose, an essential element in the proper and efficient administration of the school laws. It stabilizes the relationship between the teachers and the administration. Because education disputes frequently involve conflicting claims to one teaching position, the remedy is to award the prevailing party the position with back pay. The limitation period gives school districts the security of knowing that administrative decisions regarding the operation of the school cannot be challenged after ninety days. Moreover, because local school boards operate on a cash basis, claims must be filed promptly so that the local board can anticipate any back-pay requirements. Certainly, for the Commissioner to find that the efficient administration of a school system requires the stability offered by the ninety-day limitation period is reasonable. *N.J.A.C.* 6:24–1.2(c) represents a fair and reasonably-necessary requirement for the proper and efficient resolution of disputes under the school laws. It falls within the scope of statutory authority granted to the Commissioner and the State Board and is valid.

We also find no merit in Kaprow's claim that his due-process rights were violated by the ninety-day limitation, a position he first raised before this Court. Kaprow cites *Logan v. Zimmerman Brush Co.*, 455 *U.S.* 422, 102 *S.Ct.* 1148, 71 *L.Ed.*2d 265 (1982), to support his contention. In *Logan*, a government agency inadvertently denied a discharged employee a hearing. The Supreme Court found that such denial violated the employee's due process rights. The Court stated: "the

State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement." *Id.* at 434, 102 *S.Ct.* at 1157, 71 *L.Ed.*2d at 276–77. The Court, however, noted that not every civil litigant is entitled to a hearing on the merits in every case.

> The State may erect reasonable procedural requirements for triggering the right to an adjudication, be they statutes of limitations, or, in an appropriate case, filing fees. * * * What the Fourteenth Amendment does require, however, is "an *opportunity* ... granted at a meaningful time and in a meaningful manner," *Armstrong v. Manzo*, 380 *U.S.* 545, 552 [85 S.Ct. 1187, 1191, 14 *L.Ed.*2d 62] (1985), "for [a] hearing appropriate to the nature of the case." *Mullane v. Central Hanover Trust Co.*, 339 *U.S.* 306, 313 [70 *S.Ct.* 652, 657, 94 *L.Ed.* 865] (1950).

[*Id.* at 437, 102 *S.Ct.* at 1158–59, 71 *L.Ed.*2d at 279 (some citations omitted).]

*N.J.A.C.* 6:24–1.2(c) did not deprive Kaprow of his due-process rights. The ninety-day limitation period afforded Kaprow a *meaningful* opportunity to file his petition. In addition, the ninety-day limitation period represents a *reasonable* procedural requirement. It provides finality in education matters. Furthermore, the limitations period has withstood tangential review from this Court. *See North Plainfield Educ. Ass'n v. Board of Educ.*, 96 *N.J.* 587, 476 *A.*2d 1245 (1984).

### III

Kaprow also contends that his RIF right is an "absolute statutory entitlement" and therefore exempt from the ninety-day limitation period of *N.J.A.C.* 6:24–1.2(c). Kaprow bases that claim on *Lavin v. Hackensack Board of Education*, 90 *N.J.* 145, 447 *A.*2d 516 (1982). In *Lavin*, the petitioner, a teacher, applied for a three-year military service credit to increase her salary retroactively and prospectively under *N.J.S.A.* 18A:29–11. That statute provides that a teacher who has served in the military during a time of war "shall be entitled to receive equivalent years of employment credit for such service as if he had been employed for the same period of time" in a public school.

Lavin filed her action nine years after her employment had begun, and well beyond the six-year statute of limitations. Nevertheless, we found that because *N.J.S.A.* 18A:29–11 is an emolument that "bears no relationship to the services to be rendered as an employee," the statute of limitations should not apply. *Id.* at 150, 447 *A.*2d 516.

> The legislative purpose of *N.J.S.A.* 18A:29–11 is to reward veterans for service to their country in time of war. The reward takes the form of crediting the military service as teaching experience even though there is no functional relationship between the two. The credit has the effect of increasing the number of dollars to which the teacher who is a veteran is entitled. The emolument is not for services rendered or to be rendered for school teaching as such. It was established by the Legislature as a reward or bonus for service in the military, and not for performance as a teacher. Accordingly, the payment should be considered as a statutory entitlement, rather than as an element of the employment contract. That being so, the statute of limitations is inapplicable. [*Id.* at 151, 447 *A.*2d 516.]

*Lavin,* however, is the only reported case that found a statutory benefit to constitute an absolute statutory entitlement. In *North Plainfield Education Association, supra,* 96 *N.J.* 587, 476 *A.*2d 1245, we again considered the concept of statutory entitlement in finding that the ninety-day limitation period of *N.J.A.C.* 6:24–1.2 barred two teachers' statutory claims to credit on the salary scale for time spent on sabbatical under *N.J.S.A.* 18A:29–8. The Appellate Division had held that because the teachers had a statutory entitlement to credit on the salary scale without regard to performance, *N.J.A.C.* 6:24–1.2 was inapplicable. In reversing the Appellate Division, we distinguished the teachers' claims under *N.J.S.A.* 18A:29–8 from Lavin's claim under *N.J.S.A.* 18A:29–11.

> [S]alary increments accruing under *N.J.S.A.* 18A:29–11 are distinctly different from those awarded under *N.J.S.A.* 18A:29–8. The annual increment under *N.J.S.A.* 18A:29–11 accrues because of time spent in military service without regard to performance as a teacher. By contrast, the annual increment under *N.J.S.A.* 18A:29–8 is subject to annual evaluation of teacher performance. Consequently, [the Appellate Division's] analogy of an annual increment to the statutory entitlement for veterans is invalid. [96 *N.J.* at 594, 476 *A.*2d 1245.]

Finding that the Appellate Division had misperceived "the increment as a 'statutory entitlement unrelated to the teachers'

qualifications, performance or quality of teaching services rendered,'" *id.* at 593, 476 *A*.2d 1245, we held:

> Because the award of the annual increment is not a matter of statutory right, but is subject to "denial for inefficiency or other good cause," *N.J.S.A.* 18A:29–14, it is subject to the time bar provided in the regulation [*N.J.A.C.* 6:24–1.2] issued by the Commissioner pursuant to that statute. [*Id.* at 594, 476 *A*.2d 1245.]

Likewise, the Appellate Division in *Polaha v. Buena Regional School District,* 212 *N.J.Super.* 628, 515 *A*.2d 1271 (1986), found that *N.J.A.C.* 6:24–1.2 time-barred a teacher's assertion to his statutory right to tenure under *N.J.S.A.* 18A:28–5. The court reasoned that because the "decision necessary to confer tenure is undoubtedly carried out based on [an] evaluation of teacher performance, behavior and efficiency," *N.J.A.C.* 6:24–1.2 is applicable to the plaintiff's claim. *Id.* at 634, 515 *A*.2d 1271.

That there exists a statutory basis for rights on the reduction in the school's work force is not enough to establish a statutory entitlement. Rather, the critical inquiry focuses on whether a "functional relationship" exists between the statutory benefit, the RIF right, and Kaprow's employment as a tenured assistant superintendent in the school district.

> Whether the benefit flowing from a statute is to be considered a statutory entitlement or a term of the public employee's contract of employment depends upon the nature of the benefit and its relationship to the employment. Stating the problem in terms of incorporation in the employment contract or as a statutory benefit begs the question. Rather, attention should be directed to the purpose of the statute and its relevance and materiality to the employment. [*Lavin, supra,* 90 *N.J.* at 150, 447 *A*.2d 516.]

Kaprow's RIF rights stem from his termination for reasons related to fiscal efficiency in the administration of the school system and from his status as a tenured assistant superintendent. Indeed, Kaprow's RIF right to a preference in reemployment is predicated on his status as a *tenured* assistant superintendent. "Chapter 28 of Title 18A * * * does not purport to create employment rights for non-tenured employees." *Bednar v. Westwood Bd. of Educ.,* 221 *N.J.Super.* 239, 242, 534 *A*.2d 93 (App.Div.1987), *certif. denied,* 110 *N.J.* 512, 541 *A*.2d

1371 (1988). *See Union City Bd. of Educ. v. Union County Teachers' Ass'n,* 145 *N.J.Super.* 435, 437, 368 *A.*2d 364 (App. Div.1976), *certif. denied,* 74 *N.J.* 248 (1977). If Kaprow had not acquired tenure pursuant to *N.J.S.A.* 18A:28–5, he would have no right to seniority nor to a place on the preferred eligibility list.

Because the decision necessary to confer tenure under *N.J.S.A.* 18A:28–5 is based on an evaluation of teacher performance, behavior, and efficiency, *see Polaha, supra,* 212 *N.J.Super.* at 634, 515 *A.*2d 1271, the only way Kaprow could acquire tenure rights, and therefore RIF rights, was through employment in the school district. Kaprow's RIF rights are then distinguishable from the petitioner's right to military service credit in *Lavin;* Kaprow is not entitled to his RIF rights independent from the administration of a school system or from his standing as a tenured assistant superintendent. Instead, his RIF rights have "a relationship to the services * * * rendered as an employee." *Lavin, supra,* 90 *N.J.* at 150, 447 *A.*2d 516.

Because RIF rights are inextricably tied to employment in a school system and to tenure rights, a "functional relationship" exists between Kaprow's RIF right to preference in reemployment and his service in the school district. Rights resulting from RIFs in local school districts do not constitute a statutory entitlement. The limitations period of *N.J.A.C.* 6:24–1.2(c), therefore, applies to Kaprow's petition.

## IV

We also find that the letter Kaprow received on February 23, 1988, from the secretary of the Local Board constituted adequate notice under *N.J.A.C.* 6:24–1.2(c). Although the limitations period governing RIF rights requires that the petitioner file a petition no later than the ninetieth day from the date of receipt of the notice of a final order, ruling, or other action by

the district board of education, the regulation does not specify what constitutes adequate notice.

■■■■ Adequate notice must be sufficient to inform an individual of some fact that he or she has a right to know and that the communicating party has a duty to communicate. *See Burns v. West Am. Corp.,* 137 *N.J.Super.* 442, 446, 349 *A.*2d 142 (Dist.Ct.1975). Moreover, adequate notice under the regulation must be sufficient to further the purpose of the ninety-day limitations period. *See Apex Roofing Supply Co. v. Howell,* 59 *N.J.Super.* 462, 467, 158 *A.*2d 49 (App.Div.1960). A limitations period has two purposes. The first is to stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend, thus preventing the litigation of stale claims. *Ochs v. Federal Ins. Co.,* 90 *N.J.* 108, 112, 447 *A.*2d 163 (1982). The second purpose is " 'to penalize dilatoriness and serve as a measure of repose' " by giving security and stability to human affairs. *Ibid.* (quoting *Farrell v. Votator Div.,* 62 *N.J.* 111, 115, 299 *A.*2d 394 (1973)).

> When a plaintiff knows or has reason to know that he has a cause of action against an identifiable defendant and voluntarily sleeps on his rights so long as to permit the customary period of limitations to expire, the pertinent considerations of individual justice as well as the broader considerations of repose, coincide to bar his action. [*Farrell, supra,* 62 *N.J.* at 115, 299 *A.*2d 394.]

Adequate notice under *N.J.A.C.* 6:24–1.2 should accommodate both purposes. That is, the notice requirement should effectuate concerns for individual justice by not triggering the limitations period until the tenured teachers have been alerted to the existence of facts that may equate in law with a post-RIF cause of action. *See Burd v. New Jersey Tel. Co.,* 76 *N.J.* 284, 291, 386 *A.*2d 1310 (1978). At the same time, it should further considerations of repose by establishing an objective event to trigger the limitations period in order "to enable the proper and efficient administration of the affairs of government." *Borough of Park Ridge v. Salimone,* 21 *N.J.* 28, 48, 120 *A.*2d 721 (1956).

■ The final order, ruling, or other action by the Local Board occurred when it appointed nontenured persons to positions to which Kaprow claims tenure rights. The Local Board was clearly required to give Kaprow official notice of that action. Kaprow, however, did not receive any notice of the Board's action until February 23, 1988, when he learned from the secretary of the Local Board that it had created and filled two positions in which he claimed tenure rights. That notice, although it was unofficial and informal, was sufficient to trigger the ninety-day limitations period. It is clear that Kaprow learned that the Local Board had in fact taken final and formal action. Kaprow obviously believed that his tenured status entitled him to one or both of those positions under *N.J.S.A.* 18A:28–12 and the notice he had received was adequate to enable him to pursue his claim. In the future, it would be better if such information and notice is officially authorized and communicated by the Local Board. Nonetheless, Kaprow's February 28th letter to the secretary of the Local Board demonstrates that he had sufficient knowledge of the relevant facts to bring a RIF claim. He wrote:

> I have recently become aware that the position of Assistant Superintendent, to which I retain tenure rights, was reinstated as late as September 1986, if not before. Additionally, the duties which I performed as Assistant Superintendent have been transferred to a new position entitled District Supervisor of Elementary Education. I am certain that those duties were consolidated under one individual prior to the appointment of the District Supervisor of Elementary Education.

Kaprow's attempt to resolve his claim through negotiations with the Local Board is irrelevant. It does not negate the fact that he received adequate notice on February 23, nor does it toll the running of the limitations period. *See Riely v. Hunterdon Central Bd. of Educ.*, 173 *N.J.Super.* 109, 413 *A.*2d 628 (App. Div.1980).

Kaprow received adequate notice under *N.J.A.C.* 6:24–1.2(c) on February 23, 1988, to trigger the ninety-day limitations period. On that day, he learned from the Local Board the existence of that state of facts that would enable him to file a

timely claim. To insist under these circumstances that there be additional or more-specific notice will not further the objectives of the regulatory scheme, and would only defeat the considerations of repose and interfere with the efficient administration of the school laws. Because Kaprow received adequate notice on February 23, he was obligated to file his petition within the ninety-day period. Kaprow, however, did not file his petition until August 1, more than two months after the limitations period had expired. We therefore find that his claims are time-barred by *N.J.A.C.* 6:24–1.2(c).

## V

Finally, we reject Kaprow's contention that the Local Board's misconduct, including its failure to keep a list of RIFed employees, its failure to notify Kaprow of the available positions, and its failure to reply to his requests for information, invokes the doctrine of equitable estoppel that tolls the running of the ninety-day limitations period.

Equitable estoppel has been used to prevent a defendant from asserting the statute of limitations when the defendant engages in conduct calculated to mislead plaintiff into believing that it is unnecessary to seek civil redress. *See W.V. Pangborne & Co. v. N.J. Dep't of Transp.*, 116 *N.J.* 543, 553, 562 *A.*2d 222 (1989). Although public entities have a heightened duty to "turn square corners," *F.M.C. Stores Co. v. Borough of Morris Plains*, 100 *N.J.* 418, 427, 495 *A.*2d 1313 (1985), equitable estoppel is rarely invoked against public entities. *O'Malley v. Department of Energy*, 109 *N.J.* 309, 316, 537 *A.*2d 647 (1987).

Kaprow's estoppel claim fails for two reasons. First, the Local Board's misconduct occurring before the limitations period began to run cannot invoke equitable estoppel because Kaprow never relied on the Board's misconduct to his detriment. In addition, "if after the cessation of any basis for continued reliance by a plaintiff on the conduct of a defendant,

there remains a reasonable time under the applicable limitations period to commence a cause of action, the action will be barred if not filed within this remaining time." *Mosior v. Insurance Co. of N. Am.*, 193 *N.J.Super.* 190, 197, 473 *A.2d* 86 (App.Div. 1984). The Local Board's misconduct before February 23 did not induce Kaprow's reliance, nor did it interfere with his ability to assert a timely claim after receiving notice.

Second, by failing to reply to Kaprow's letters, the Local Board made no representation that was calculated to lull Kaprow into a false sense of security with respect to his right to take judicial action. Although the Appellate Division characterized the Local Board's failure to reply to Kaprow's letters as "stonewalling," the Local Board's inaction did not induce Kaprow's reasonable reliance. The Local Board's failure to respond to Kaprow's letters provides an insufficient basis for Kaprow to conclude that the Local Board agreed to address his claim. *Compare Friedman v. Friendly Ice Cream*, 133 *N.J.Super.* 333, 336 *A.2d* 493 (App.Div.1975) (holding equitable estoppel applicable where defendant used settlement negotiations to lull plaintiff into delaying the filing of its action). Indeed, the record contains no evidence that the Local Board gave Kaprow any indication that it planned to respond to his demands. Nor was the Local Board under a legal duty to respond to Kaprow's letters. *Compare State v. United States Steel*, 22 *N.J.* 341, 126 *A.2d* 168 (1956) (holding equitable estoppel applicable to party's failure to disclose actionable essentials in the face of duty to speak). Despite the Local Board's inaction, Kaprow knew of his RIF rights; the inaction did not deny Kaprow the opportunity to assert a timely claim. We therefore hold that the doctrine of equitable estoppel does not apply to toll the ninety-day limitations period.

▮▮▮ Nor do these facts present the exceptional circumstances that compel the Commissioner to waive the ninety-day limitation. *N.J.A.C.* 6:24-1.15 authorizes the Commissioner to relax procedural rules in his discretion "where a strict adher-

ence thereto may be deemed inappropriate or unnecessary or may result in injustice." The Commissioner did not consider relaxation of the ninety-day limitation period. The State Board, however, specifically found no circumstances surrounding petitioner's claims to warrant relaxation of the ninety-day filing requirement under *N.J.A.C.* 6:24–1.15. Ordinarily, we will not reverse the determination of an administrative agency unless it is arbitrary, capricious or unreasonable, or is not supported by substantial credible evidence in the record as a whole. *Dennery v. Board of Educ.*, 131 *N.J.* 626, 641, 622 *A.*2d 858, 866 (1993); *Barry v. Arrow Pontiac, Inc.*, 100 *N.J.* 57, 71, 494 *A.*2d 804 (1985). We adhere to that standard to resolve disputes arising under school laws. *Dennery, supra,* 131 *N.J.* at 641, 622 *A.*2d at 866; *Dore v. Board of Educ.*, 185 *N.J.Super.* 447, 452, 449 *A.*2d 547 (App.Div.1982). Our review of the record demonstrates that the State Board did not act arbitrarily or unreasonably in declining to enlarge or relax the ninety-day limitation period. The record fails to exhibit the unusual and compelling circumstances warranting such relief under *N.J.A.C.* 6:24–1.15. Kaprow was aware of his claim to the Assistant Superintendent and District Supervisor positions on receipt of the February 23 letter, yet he failed to file his petition within ninety days. We are satisfied that the State Board's finding regarding the application of *N.J.A.C.* 6:24–1.15 is not unreasonable.

## VI

Although we hold that *N.J.A.C.* 6:24–1.2(c) bars Kaprow's petition, we do not approve of the Local Board's treatment of Kaprow. Although courts are "not at liberty to interfere with regulatory and administrative judgments of the professionals in the field of public education unless those judgments are palpably arbitrary or depart from governing law," *Dennery, supra,* 131 *N.J.* at 643, 622 *A.*2d at 867, we emphasize that fair dealing should be the hallmark of all government agencies. Accordingly, we endorse and underscore the Commissioner's direction

that the Local Board henceforth be more conscientious in fulfillment of its obligations pursuant to *N.J.S.A.* 18A:28–12. Because "the reasonableness of the tenure system and its application in individual cases reposes in the sound and expert discretion of the educators statutorily authorized to regulate public education," *id.* at 643, 622 *A.*2d at 866–67, we defer to the Commissioner's finding that Kaprow is entitled as a matter of law to the position of Assistant Superintendent of Administrative Services.

The judgment of the Appellate Division is affirmed.

*For Affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.