**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2489-17T4

PATRICIA ASCOLESE,

      Petitioner-Appellant,

v.

BOARD OF EDUCATION OF
THE TOWNSHIP OF NORTH
BERGEN, HUDSON COUNTY,
GEORGE SOLTER, Superintendent,
and STEVEN SOMICK, Business
Administrator,

      Respondents-Respondents.

_____

Argued April 2, 2019 – Decided September 3, 2019

Before Judges Rothstadt and Natali.

On appeal from the New Jersey Commissioner of Education, Docket No. 19-1/17.

Casey R. Langel argued the cause for appellant (Genova Burns, LLC, attorneys; Angelo J. Genova and Casey R. Langel, of counsel and on the briefs).

Kevin W. Hanly argued the cause for respondents Board of Education of Township of North Bergen, Hudson County, George Solter, and Steven Somick.

Gurbir S. Grewal, Attorney General, attorney for respondent Commissioner of Education (Laurie L. Fichera, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Petitioner Patricia Ascolese is the widow of the late Vincent Ascolese, who before his retirement in 2012 was an educator, coach and Assistant Superintendent in the Township of North Bergen's school district. She appeals from the December 27, 2017 final agency decision of the State Commissioner of Education (Commissioner) that adopted the September 27, 2017 Initial Decision of an Administrative Law Judge (ALJ), dismissing her petition against respondents the Board of Education of the Township of North Bergen (Board); George Solter, the Board's Superintendent; and Steven Somick, the Board's Business Administrator (BA).

The petition alleged that the Board improperly calculated petitioner's late husband's reimbursement for his uncompensated, unused sick and vacation days. In response to an application filed by the Board, the ALJ recommended that the petition be dismissed as untimely under the "ninety-day rule" set forth in N.J.A.C. 6A:3-1.3(i). The Commissioner adopted that recommendation, setting

2

forth her reasons in a written decision. We affirm because we conclude the Commissioner's determination that the petition was untimely was supported by the evidence in the record and was legally correct.

The facts taken from the record as found by the ALJ and adopted by the Commissioner are summarized as follows. Vincent[1] was employed by the Board from September 1973 to January 2012, when he retired. During his service, he accumulated 495 available, unused sick, vacation, and personal days.

Prior to the 2009-2010 school year, Vincent was diagnosed with cancer. Due to his illness, he was unable to perform his duties as Assistant Superintendent, but continued to coach football on a voluntary basis throughout the 2011 season.

Prior to March 25, 2010, Vincent met with the Board's counsel to discuss his available sick and vacation days. On March 25, 2010, the Board's counsel sent Vincent a copy of a memorandum to the district's superintendent confirming that Vincent planned on using seventy-six sick days from March 8, 2010 through the end of the school year on June 30, 2010.

---

[1] We refer to the Acoleses by their first names to avoid any confusion created by their common surname. No disrespect is intended.

 A-2489-17T4

In a later response to that memo, Vincent wrote to the Superintendent that he agreed that he had "accumulated 495 sick, personal and vacation days." Vincent also advised that he in fact used sick days from March 8, 2010 until June 30, 2010—a total of seventy-six days—due to his illness. He also stated that he planned to use vacation days from July 1, 2010 until December 31, 2010.

Vincent did not return to work in 2011, using additional sick days from January 1, 2011 through July 31, 2011. As of that date, he had 184 days left. On August 10, 2011, he sent another memorandum, clarifying that he used vacation days from July 1, 2010 until December 31, 2010. He stated that he used a total of 250 sick and vacation days during the 2010-2011 school year and, as of July 30, 2011, had 184 remaining days. He also stated his intent to retire as of January 6, 2012.[2]

At some point before August 30, 2012, Vincent met with Somick, the district's BA, to discuss his retirement. At that meeting, Somick advised Vincent that he would be paid $74,553.92 for his outstanding unused time. According

_____

[2] Patricia contended that the two typed memoranda alleged to have been sent by Vincent could not have been written by him because he never learned how to type and because the signatures on the memoranda did not match his signature. She also alleged that her husband did not use any sick days whatsoever while employed.

A-2489-17T4

to Somick, Vincent agreed with the number of days outstanding and believed that the value of that time would be calculated in accordance with his contract with the Board.[3]

On August 30, 2012, the Board sent Vincent a net check for $8,564.62, representing $10,000 in pre-tax earnings, which cleared on the same day. On July 11, 2013, it sent a second net check for $40,127.35, representing $64,563.92 in pre-tax earnings, which cleared on July 22, 2013. Each check was endorsed by Vincent and Patricia. Both checks' "codes" were "T – Termination," but were sent without any additional explanation or accompanying memoranda.

In the spring of 2014, Vincent's son, Michael, met with one of the Board's attorneys to discuss how the amounts for Vincent's unused time were calculated. When they could not agree on the calculation, they discussed using a mediator to calculate the amount and then submitting the issue to the County Superintendent of Education. On August 13, 2014, Vincent received a letter

---

[3] According to Somick, Vincent's net pay for unused days was as follows:

2009-2010 school year: $16,818.90
2010-2011 school year: $20,026.51
2011-2012 school year, until date of retirement: $18,024.45.

from an attorney who the Board retained to represent it in the mediation, confirming what was discussed at the meeting with Michael and asking Vincent for the name of the attorney who would be representing him at the mediation. Vincent never responded and the parties never participated in a mediation or had any further discussions.

Vincent passed away on December 3, 2014. From that date through January 30, 2017, the only events that occurred regarding claims about Vincent's compensation were that on April 5, 2015, Patricia received Vincent's personnel file, which contained "memoranda and correspondence concerning [his] accumulated sick and vacation days" dating back to 2012. Also, in December 2016, she exchanged correspondence with the Board about "missing information" that was omitted from the file, which she needed to "calculate the requisite payment due Vincent." According to Patricia, the Board's December 27, 2016 response enclosing additional documents "constitute[d] the final ruling or other action by the Board."

On January 30, 2017, Patricia filed her petition with the Commissioner. In the petition, she contended that Vincent never used any sick time during his final years of employment and sought a determination of the retirement benefits payable to her as surviving spouse. The Board filed an answer and moved on

A-2489-17T4

March 15, 2017, to dismiss the petition under the ninety-day rule. Patricia filed opposition to the Board's application. The matter was referred to the Office of Administrative Law for a determination by an ALJ.

After considering the parties' submissions, ALJ Irene Jones issued her September 27, 2017 Initial Decision. In her comprehensive decision, the ALJ noted that Patricia sought supplemental reimbursement for Vincent's alleged unused sick and vacation time, and that the Board moved for dismissal under the ninety-day rule, arguing that Vincent's action in cashing the second reimbursement check in 2014 served as the triggering action under the rule.

The ALJ found that Patricia failed to file a timely claim. She concluded that Vincent's negotiation of the checks in 2012 and 2013 served as the first triggering event under the ninety-day rule, and that the Board's counsel's letter sent on August 13, 2014 served as a second trigger. A third trigger occurred on April 5, 2015, when the Board delivered Vincent's personnel file that included the memoranda and correspondence regarding his accumulated sick and vacation time. In each of the above instances, Vincent or Patricia failed to file a petition within ninety-days.

The ALJ rejected Patricia's contention that a December 26, 2016 memorandum enclosing copies of the termination checks and Vincent's

employment contract was another triggering event. The ALJ explained that given the "largess" of the checks, it is impossible that Patricia and her late husband were not aware that it was reimbursement for leave time. The ALJ also stated that, although she was mindful of Vincent's illness during the applicable time period, it did not constitute sufficient cause for relaxation of the rule.

Patricia filed exceptions to the ALJ's determination with the Commissioner. In her exceptions, Patricia contended that none of the trigger dates identified by the ALJ were "final Board actions," the Board never adopted a resolution authorizing Vincent's reimbursement, and that the trigger dates found by the ALJ were inconsistent with applicable notice requirements. She also argued that even if she and her late husband knew the checks were reimbursement for leave time, they did not know they were payment in full.

Patricia also argued that the ALJ incorrectly applied the standard for summary decision because she failed to consider the facts in the light most favorable to her, and, in any event, summary disposition was not warranted until she had an opportunity to conduct discovery. Patricia also contended that the ALJ's factual findings were arbitrary, capricious, or unreasonable. The Board replied, arguing that the ALJ properly dismissed the petition because a formal

hearing is not necessary to trigger the rule and the ALJ relied on factual findings that were not in dispute.

The Commissioner considered the ALJ's Initial Decision and Patricia's exceptions then issued her December 27, 2017 final decision. The Commissioner rejected Patricia's contentions that neither the August 13, 2014 letter that explicitly stated that the Board had yet to determine the total amount due to Vincent nor the delivery of Vincent's personnel file were not triggering events.

The Commissioner explained that the ALJ took an expansive approach and set three possible triggering dates, the most recent of which was in April of 2015, and "[g]iving [Patricia] the benefit of every doubt, the ALJ still found that the petition was filed after the running of the last conceivable trigger date." The Commissioner concurred with the ALJ's determination as stated in the Initial Decision and found that Patricia failed to set forth any compelling reason to relax the timely filing requirement. The Commissioner adopted the Initial Decision and dismissed the petition. This appeal followed.

On appeal, Patricia contends that the Commissioner's final decision must be reversed because the ALJ and the Commissioner misapplied the ninety-day rule. She also argues that the ALJ did not apply the correct standard for a

summary decision.  Finally, she contends for the first time on appeal that the Commissioner should have found that the Board was "equitably estopped" from not paying Patricia for Vincent's "complete benefits" or relying upon the ninety-day rule.  We find no merit to these contentions.

Our review of an administrative agency's final determination is limited. In re Adoption of Amendments, 435 N.J. Super. 571, 582 (App. Div. 2014).  We "afford[] a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities."  Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting City of Newark v. Nat. Res. Council, Dep't of Envtl. Prot., 82 N.J. 530, 539 (1980)).  We may reverse only if we "conclude that the decision of the administrative agency is arbitrary, capricious or unreasonable, or is not supported by substantial credible evidence in the record as a whole." J.D. v. N.J. Div. of Developmental Disabilities, 329 N.J. Super. 516, 521 (App. Div. 2000).

Our review is therefore limited to three questions: (1) whether the decision is consistent with the agency's governing law and policy; (2) whether the decision is supported by substantial evidence in the record; and (3) whether, in applying the law to the facts, the agency reached a decision that could be viewed as reasonable.  In re Adoption of Amendments, 435 N.J. Super. at 583 (quoting

Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).  Implicit in the scope of our review is a fourth question: whether the agency's decision offends the State or Federal Constitution.  George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994).  The burden of proof is on the party challenging the agency's action.  Lavezzi, 219 N.J. at 171.

However, we are not "bound by the agency's interpretation of a statute or its determination of a strictly legal issue."  Ardan v. Bd. of Review, 231 N.J. 589, 604 (2018) (quoting US Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012)).  We consider those issues de novo.  L.A. v. Bd. of Educ. of Trenton, 221 N.J. 192, 204 (2015).  But, "[w]hen resolution of a legal question turns on factual issues within the special province of an administrative agency, those mixed questions of law and fact are to be resolved based on the agency's fact finding."  Campbell v. N.J. Racing Comm'n, 169 N.J. 579, 588 (2001).

Applying our deferential standard of review, we turn to the Commissioner's application of the ninety-day rule.  The rule is codified in N.J.A.C. 6A:3-1.3(i), which states the following:

> The petitioner shall file a petition no later than the 90th day from the date of receipt of the notice of a final order, ruling, or other action by the district board of education, individual party, or agency, that is the subject of the requested contested case hearing.  This rule shall not apply in instances where a specific

> statute, regulation, or court order provides for a period of limitation shorter than 90 days for the filing of a particular type of appeal.

"[T]he limitation period gives school districts the security of knowing that administrative decisions regarding the operation of the school cannot be challenged after ninety-days." Nissman v. Bd. of Educ. of Twp. of Long Beach Island, Ocean Cty., 272 N.J. Super. 373, 380 (App. Div. 1994) (alteration in original) (quoting Kaprow v. Bd. of Educ. of Berkeley Twp., 131 N.J. 572, 582 (1993)). "Moreover, because local school boards operate on a cash basis, claims must be filed promptly so that the local board can anticipate any [compensation] requirements." Ibid.

The intent of the ninety-day rule is to stimulate litigants to pursue a right of action within a reasonable time, so that the opposing party may have a fair opportunity to defend. Kaprow, 131 N.J. at 587. The rule furthermore exists to "penalize dilatoriness and serve as a measure of repose by giving security and stability to human affairs." Ibid. (quoting Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 115 (1973) (internal quotation marks omitted)).

Under the rule, "[a]dequate notice must be sufficient to inform an individual of some fact that he or she has a right to know and that the communicating party has a duty to communicate." Ibid. (holding that receipt of

a correspondence triggers the rule). The ninety-day period for commencing an action begins to run when a petitioner "learns, or reasonably should learn, the existence of that state of facts which may equate in law with a cause of action." Burd v. N.J. Tel. Co., 76 N.J. 284, 291 (1978) (emphasis omitted). The notice requirement "should effectuate concerns for individual justice by not triggering the limitations period until the . . . teacher[] ha[s] been alerted to the existence of facts that may equate in law with a . . . cause of action." Ibid. Notice that is "unofficial and informal" is "sufficient to trigger the ninety-day limitations period." Id. at 588.

Under certain circumstances, the rule's provisions may be relaxed. "N.J.A.C. 6:24-1.19 confers on the Commissioner the authority to relax the [ninety-] day rule, [but] such authority [may be] invoked only where there are compelling reasons justifying relaxation or where circumstances are such that strict adherence would be inappropriate, unnecessary or where injustice would occur." Polaha v. Buena Reg'l Sch. Dist., 212 N.J. Super. 628, 632 (App. Div. 1986). Compelling reasons include where there have been ongoing negotiations between the parties. Id. at 635.

According to Patricia, "adequate notice of the action" equated with the Board taking "formal action" before the ninety-day rule was triggered. She also

contends that each of the events that the ALJ determined were "triggering" were not, as although Vincent received the termination checks and negotiated them, there was nothing in the record that indicated that they were compensation for unused sick time or served to fulfill the Board's contractual obligation to her husband. Patricia contends that the payments could have been "the first two installments towards a much larger amount."

Referring to the August 13, 2014 letter, Patricia explains that it referenced discussions which took place in the spring of 2014, which "unambiguously indicates that the Board had yet to determine the amount due [and i]f it had made such a determination, then it would not have sent the letter or conducted discussions that spring." According to Patricia, the letter proves only that the Board had yet to make a final order or ruling regarding the amount owed to Vincent.

Finally, Patricia contends that the date on which she received Vincent's personnel file was not a triggering event. She explains that the file was not part of the record before the ALJ and thus it was not possible to conclude whether it contained sufficient information to provide notice of a final determination and, in any event, the file, at most, "serve[d] as notice of the types of materials the

14

Board may use in a future determination." We are not persuaded by any of these contentions.

Contrary to Patricia's contention, the Board was not required to take formal action before the ninety-day period began. Kaprow, 131 N.J. at 586-88. The three triggering dates found by the ALJ were sufficient because in each of those instances, Vincent or Patricia were put on notice of a potential claim against the Board. First, although the explanation accompanying the checks could have been more expansive, it unambiguously stated that the checks were for "termination." If Vincent or Patricia was unsure of the purpose of the checks or whether additional checks would be sent, they could have communicated with the Board upon receipt or pursued a petition for additional compensation.

If the checks did not provide the requisite notice, the August 2014 letter clearly gave notice that the parties were in disagreement over the computation of the value of Vincent's unused days. The letter explicitly stated that the parties had expressed that disagreement at an earlier meeting and it confirmed that there had been a discussion about Vincent retaining an attorney and participating in a mediation of the dispute. If that method was not satisfactory, Vincent or anyone on his behalf was free to file a timely petition for relief. No action was taken and there were no ongoing negotiations after that date.

Finally, Vincent's personnel file contained information regarding the number of days for which Vincent was being compensated and even after Patricia received that file, it took years before she filed her petition, without ever providing a reason for the delay that occurred from the date of Vincent's passing to the date of her filing.

In adopting the ALJ's initial decision, the ALJ and the Commissioner correctly applied the controlling legal principles, made factual findings that are amply supported by the record, and reached a conclusion that is clearly not arbitrary or capricious. We have no occasion to interfere.

We find Patricia's remaining arguments to the contrary lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We only observe that we agree that the matter was properly dismissed as untimely through the summary decision process, see N.J.A.C. 1:1-12.5, and that her arguments regarding equitable estoppel were not raised before the ALJ or Commissioner and therefore not subject to our review. See Nieder v. Royal Indemn. Ins. Co., 62 N.J. 229, 234 (1973). Even if they were, we find them to be without any merit. See Kaprow, 131 N.J. at 589-90 (finding equitable estoppel inapplicable where, "after the cessation of any basis for continued reliance by a plaintiff on the conduct of a defendant there remains a reasonable

time under the applicable limitations period to commence a cause of action," and where there was no evidence of a "representation that was calculated to lull [plaintiff] into a false sense of security with respect to his right to take judicial action"). Cf. Middletown Twp. PBA Local No. 124 v. Twp. of Middletown, 162 N.J. 361, 371-72 (2000) (finding equitable estoppel appropriate where a municipality repeatedly assured a retired employee that he will receive certain promised benefits).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION